JOHN O'CONNOR *v.* CITY OF MEMPHIS.

MUNICIPAL CHARTER. *Repeal. Reincorporation. New corporation liable for debts of old. When.* When the charter of a municipal corporation is repealed, and the same people and the same territory are reincorporated as a municipality under a new name, although with different powers and different officers, a suit pending against the old corporation at the date of the repeal may be revived against the new corporation.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. S. P. WALKER, Ch.

Motion to revive against the Taxing District.

W. M. RANDOLPH, MYERS & SNEED and GANTT & PATTERSON for Motion.

C. W. HEISKELL for Taxing District.

COOPER, J., delivered the opinion of the court.

By the act of 1879, ch. 10, the Legislature repealed certain charters of municipal corporations, and among others, the charter of the city of Memphis. By an act passed on the same day, the several communities embraced in the territorial limits of the municipal corporations whose charters were thus abolished, were created taxing districts, "in order to provide the means of local government for the peace, safety and

O'Connor *v.* City of Memphis.

general welfare of such districts." The community embraced in the territorial limits of the city of Memphis became, by the act, the taxing district of Shelby county, and organized under it. This court has held, as the result, that the charter of the city of Memphis had been validly repealed, and that the same people and the same territory had been constitutionally re-incorporated as a municipality: *Luehrman* v. *Taxing District of Shelby County*, 2 Lea, 425.

At the time of the passage of these acts, the suit of *John O'Connor* v. *City of Memphis* was pending on the docket of this court by appeal from the chancery court. At the succeeding term, on motion of the complainant, a *scire facias* was issued in the case requiring the Taxing District of Shelby county to show cause why the suit should not be revived against it. The Taxing District has demurred to the *scire facias*.

The *scire facias* in this State is a statutory mode of reviving suits in this court, as well as the inferior courts, against the heir, representative, assign, or "other successor" of a deceased party: Code, sec. 2853 *et seq*. It has not been denied that the *scire facias* would lie in this case if the Taxing District could be brought in for the purpose of being proceeded against as a proper defendant. The argument in support of the demurrer is vested upon the ground that the new corporation sustains no such relation to the old corporation as to authorize any proceeding against it in any mode for a debt of the latter. It is also said, that if the corporations are the same no revivor is necessary. But if this be conceded, the complainant would still

have the right, by suggestion of record or otherwise, to bring the facts before the court, so that the further proceedings might be in the right name. In this view, the *scire facias* may be treated as a notice, and, in the absence of any special objection to the form of the proceeding, as sufficient to raise the issue to be determined: *East Tenn. & Ga. R. Co.* v. *Evans*, 6 Heis., 607. The real question is, whether the new corporation is the same as the old corporation, or so far its successor as to be liable for its debts.

It was the received doctrine at one time that, by the principles of the common law, upon the civil death of a corporation, its real estate reverted to the original grantor or his heirs, the debts due to and from it were extinguished, and its personal property vested in the State. The law was so stated, *arguendo*, in some of our cases: *White* v. *Campbell*, 5 Hum., 38; *Ingraham* v. *Terry*, 11 Hum., 572; *Hopkins* v. *Whitesides*, 1 Head, 31. There is reason to doubt whether the decisions of the courts ever justified such a statement of the law: *Bacon* v. *Robertson*, 18 How., 480. And it is now well settled, both in England and in this country, that equity will, upon the dissolution of a corporation by the expiration of its charter or otherwise, impound its property real and personal and appropriate it, first to the payment of its debts, and then for the benefit of the stockholders. The law now is, independent of statute, that upon the civil death of a corporation, its real estate does not revert to the original owners, the debts due to and from it are not extinguished, and its personal property does

O'Connor *v.* City of Memphis.

not vest in the State. This court, in accord with all the modern rulings, has expressly so held: *State* v. *Bank of Tennessee*, 5 Baxt., 101.

Looking only to the fact that a corporation is created by its charter, it is logically correct to say that each corporation called into being by an independent charter is a distinct entity. From this premise, it has been ingeniously and ably argued that two successive corporations cannot be connected together any more than two human beings, born successively, can be treated as one. But if the doctrine of metempsychosis be admitted, the identity of individuals would be possible, by the transmigration of the essential part, and their succession in rights and liabilities is recognized by law. And the Legislature and the courts have settled the continuity of corporations by the transfer of their material parts, whether by identity or succession is practically immaterial, although the old charter may be expressly repealed and an entirely new charter granted. It has been loosely said, that whether a legislative charter will operate to revive or continue an old, or to create a new and distinct corporation, depends upon the intention of the Legislature. More accurately, it has been said we must look to the terms of the charter, and give them a construction consistent with the legislative intent and the intent of the corporators. Both forms of expression are an adaptation of the language of Judge Story in the case of a private corporation, where the corporate name of the new creation and some of the corporators were the same as those of a then existing corporation, but

the residue of the corporators and the corporate property were not the same: *Bellows* v. *Hallowell Bank,* 2 Mason, 43. But in no case have the courts ever failed to declare the identity, or succession, or continuity of the two corporations where the same corporators and the same corporate property have passed to the new corporation. The "terms of the charter" have, in such cases, never been construed otherwise.

In reference to municipal corporations, the rule from the earliest times has been that a change of name or function would not affect obligations: *Luttrel's Case,* 4 Rep., 87, *b*; *Haddock's Case,* Raym., 439. Entirely new charters, upon a total cessation of user for years under an old charter, have been held to have no greater effect: *Colchester* v. *Seaber,* 3 Burr., 1866: "Many corporations," says Lord Mansfied in this last case, "for want of legal magistrates, have lost their activity, and obtained new charters, and yet it has never been disputed but that the new charters revive and give activity to the old corporation. Where the question has arisen upon any remarkable metamorphosis, it has always been determined that they remain the same as to debts and rights." The statute books of this State are full of instances where new charters have been granted to municipal corporations, upon an express or implied repeal of the old charter, with a change of name and organization, and the continuity of the corporations, "as to debts and rights," never doubted. A striking instance is found in the history of the municipal corporation now before us. In 1849, the people and territory of the

"City of Memphis" and of the "Town of South Memphis," were reincorporated under the name and style of the "Mayor and Aldermen of the City of Memphis," by an act which expressly repealed all laws to the contrary, the previous charters of the separate corporations being thereby repealed as was held by this court: *Daniel* v. *M. and A. of Memphis*, 11 Hum., 482. The conclusion of Mr. Justice Fields on this subject is warranted by all the authorities: "When a new form has been given to an old municipal corporation, or such a corporation is reorganized under a new charter, taking in its new organization the place of the old one, embracing substantially the same corporators and the same territory, it will be presumed that the Legislature intended a continued existence of the same corporation, although different powers are possessed under the new charter, and different officers administer its affairs; and, in the absence of express provision for their payment otherwise, it will also be presumed in such case that the Legislature intended that the liabilities as well as the rights of property of the corporation in its old form should accompany the corporation in its reorganization": *Broughton* v. *Pensacola*, 93 U. S., 266. To the same effect in substance are *Milner* v. *Pensacola*, 2 Wood, 638; *Trustees* v. *City of Erie*, 31 Penn. St., 515; *Shankland* v. *Phillips*, 3 Tenn. Ch., 556; *Olney* v. *Harvey*, 50 Ill., 453; *Girard* v. *Philadelphia*, 7 Wall., 1.

Neither the repeal of the charter of a municipal corporation, nor a change of its name, nor an increase or diminution of its territory or population, nor a

change in its mode of government, nor all of these things combined, will destroy the identity, continuity or succession of the corporation, if the people and territory reincorporated constituted an integral part of the corporation abolished.    The reason is to be found in the peculiar nature of such corporations.    A charter for municipal purposes is an investing of the people of a place with the local government thereof, constituting an *imperium in imperio,* and the corporators and the territory are the essential elements, all else being mere · incidents or forms: *Cuddon* v. *East-wick,* 1 Salk., 192; *Luehrman* v. *Taxing District,* 2 Lea, 425; *People* v. *Morris,* 13 Wend., 325; *People* v. *Hurlburt,* 24 Mich., 44, 88; *New Orleans R. Co.* v. *City of New Orleans,* 26 La. Ann., 476.    And precisely as a change in the form of government, or even the conquest of a State will not affect its rights or liabilities, whatever may be the incidental modifications, so neither will a change of the lesser empire. The property held by such a corporation for public use cannot be subjected to the claims of creditors, and is only held by it as trustee.    The only means at its disposal for the payment of debt consist, ordinarily, of the taxes which it is authorized to raise from the persons, property and business within its territorial limits.    The persons and property, or, as said above, the corporators and the territory are the essential constituents of the corporation, and rights and liabilities naturally adhere to them.

    The courts have accordingly held that creditors may follow these constituents even when divided out

O'Connor *v.* City of Memphis.

among other distinct municipalities, the original debtor corporation being abolished. As long as the old corporation continues to exist, although shorn of its proportions, the creditor may, and according to some authorities, must look exclusively to it: *Howard* v. *Horner*, 11 Hum., 532; *Laramie County* v. *Albany County*, 92 U. S., 307. A qualification of the latter part of the rule may be assumed, although the point seems never to have arisen in judgment, where the municipality has been so reduced in population and territory as to be unable to meet the liabilities. If, however, two new townships are created out of an old one, it has been held that a judgment creditor of the latter may revive his judgment by *scire facias* against each of the new townships, subject to only one satisfaction: *Plunket Creek Township* v. *Crawford*, 27 Penn. St., 107. So, where one town was abolished by statute, and its population and territory unequally divided between two others, a creditor of the old town was held entitled, by bill, to charge each of the new towns with its proportion of the debt: *Mount Pleasant* v. *Beckwith*, 100 U. S., 514. "The effect of the annulment," says Mr. Justice Clifford in this case, "and annexation, will be that the two enlarged corporations will be entitled to all the public property and immunities of the one that ceases to exist, and that they will become liable for all the legal debts contracted by her prior to the time when the annexation is carried into operation." This court has reached the same conclusion in the case of a school district divided between other districts: *Bank*

47—VOL. 6.

v. *Baber,* December term, 1880. See, also, *District of Columbia* v. *Class,* U. S. S. C., October term, 1880; 12 Cent. L. J., 381. In view of the plenary power of the Legislature over municipal or quasi-municipal corporations, and the necessity of its frequent exercise according to public exigency, the wisdom of these rulings is obvious.

It has been argued that the liabilities of a dissolved corporation only follow its territory and population into a new corporation in the absence of any legislation on the subject, and that the Legislature may expressly provide otherwise. But there is no warrant for the argument, either in reason or authority. Some of the learned judges, in delivering the opinion of the court in particular cases, have taken care, as was right and proper in a question of so much importance, to limit the decision to the very case before them, and have said that the result reached would follow, "at any rate in the absence of any declaration of legislative intent to the contrary." No intimation has been given that if there was such declaration the decision would be different. Mr. Justice Field expresses the opinion in the Pensacola case that the liabilities will accompany the corporation in its new form "in the absence of express provision for their payment otherwise." So, Mr. Justice Clifford's expression is that "the Legislature may regulate the subject," that is, as the context shows, may proportion the liabilities between the new corporations as its wisdom may suggest. Neither of these eminent judges, nor has any judge, intimated, much less decided, that

the Legislature could interfere with the rights of cred-
itors, or the legal result of the legislation.    On the
contrary, every judge has, in view of the provision
of the Constitution of the United States, unhesitatingly
said that the Legislature could not impair the obliga-
tion of the creditor's contract.    If it were otherwise,
the Legislature might simply repeal the charter of a
municipal corporation, and at once reincorporate the
same people and territory under a similar corporation,
and cut off creditors by adding that the new corpo-
ration should not be liable for the debts of the old
corporation.    Such legislation would be obnoxious to
the Constitution of the United States, art. 1, sec. 10,
and the Constitution of the State, art. 1, sec. 20, and
art. 11, sec. 8.    Even the right acquired by a pend-
ing suit cannot be affected by such legislation : Code,
sec. 49; *Fisher* v. *Dabbs*, 6 Yer., 119.    And the
Legislature cannot . do indirectly what it is not at
liberty to do directly.

In the act repealing the charter of the city of
Memphis, there is a provision transferring the public
property of the city to the "custody and control of
the State," to remain public property for the uses to
which it had been previously applied.    By the act
reincorporating the same community and same territory
in the name of the Taxing District, this property is
again transferred to the custody and control of the
governing board of the new corporation, to remain
public property for the like uses.    The city of Mem-
phis seems to have owned no other property.    Con-
fining ourselves for the present to these provisions of

the act, the substance of what was done was that the people and territory of the repealed corporation were at once reincorporated into a municipal corporation, and given possession of all . the property of the old corporation for the same public use. The new corporation is identical with the old corporation in all of its essential elements. A change in the form of the government would be unimportant. Unless, therefore, there is something else in the charter to take the case out of the rule, rights and liabilities would remain as before.

It is argued that pending suits for or against the old city are, under the provisions of the new charter, not to abate, but to be prosecuted to final determination without change of parties, citing act of 1879, ch. 11, sec. 14. This is, however, a mistake. That section, as the act was originally passed, did contain the words: "And all suits now pending shall be prosecuted to final determination under the provisions of this act without change of parties." But the context shows that the suits thus provided for were suits in favor of the old corporation for indebtedness due to it for taxes or otherwise, and this provision was repealed by the fifth section of the amendatory act passed at the same session of the Legislature. There is no provision for pending suits against the old corporation.

There was a large amount of uncollected taxes which had been assessed from time to time by the city of Memphis, either in the course of its regular business or acting under the orders of the courts.

The Legislature vested this indebtedness in the State, "to be disposed of for the settlement of the debts of said extinct municipality as shall be hereafter provided by law." By a subsequent act passed at the same session, the Legislature directed the Governor to appoint a receiver and back tax collector to collect these taxes in the mode prescribed, and to appropriate them among those entitled, under the orders of the chancery court, by means of a general creditor's bill, filed by him in the name of the State, and on behalf of all the creditors, against all delinquent taxpayers, pending suits against such taxpayers being revived in the name of the State and consolidated therewith. The creditors are permitted to make themselves parties to the receiver's bill by filing their claims, and having the same ascertained in a summary way upon a contest by any of the other creditors or by the receiver.

So far as the legislation in question undertakes to appropriate the uncollected taxes to the payment of the debts and liabilities of the old corporation, it is a regulation of the matter "as between the parties." To the extent of the payment which the creditors may receive under its provisions, the new corporation would have the benefit. But neither the old nor the new corporation is required to be a party to that suit, and therefore the claimant could recover no judgment against either. The Legislature, as we have seen, could not violate the obligation of the claimant's contract, either by reducing the claim to the *pro rata* which might be received under the receiver's bill, or by compelling the creditor to go against any person

except his debtor: *Howard* v. *Horner,* 11 Hum., 532. Nor could the Legislature interfere with the creditor's pending suit. The Legislature has not made provision for the payment of the entire debts, nor regulated the subject as between the parties.

The act incorporating the Taxing District expressly prohibits the governing agencies from levying taxes for any purpose, reserving that power in the Legislature. It further provides that the local government shall not "pay or be liable to pay any debt created by said extinct corporation, nor shall any of the taxes collected under the act ever be used for the payment of any of said debts." The latter provision is itself a legislative recognition of the identity, continuity or succession of the two corporations, for otherwise it would have been useless. And the question comes to this, can the Legislature, where the corporations are substantially the same according to the terms of the charter as construed by the courts, change the legal effect of what has been done by a positive mandate that the new corporation shall not be liable for the debts of the old? If it can, it would logically follow that the Legislature could prohibit a corporation from paying its own debts. It has no such power. Such a prohibition is simply void. And in this case, under the circumstances, the provision in question is amenable to the constitutional objection that it undertakes to impair the obligation of contracts. Whether the Legislature can withhold the taxing power as against debts previously contracted, is a grave question not now before us. It may be that the creditor cannot

O'Connor *v.* City of Memphis.

collect his debt, but, to use the language of Judge Clifford in the Beckwith case, "he ought always to be able by some proper action to reduce his contract to judgment." The creditor should have this right in the present ·case, both for the purpose of reaching his share of the assets which may be realized by the receiver, and to have the benefit of future legislation. The courts can never presume the permanent repudiation by the State of an honest demand. This court has decided that the holder of a valid claim on the treasury of the State is entitled to compel the comptroller to issue him a warrant therefor, although it cannot be paid without an appropriation for the purpose by the Legislature, and no such appropriation has been made.

We express no opinion on any point not now before us. All we undertake at present to decide is that the Taxing District of Shelby county is so far the successor of the late corporation of the city of Memphis, or the same corporation under a new name, that a suit pending against the old corporation may be revived against the new, and prosecuted to judgment.

FREEMAN, J., said:

I think it proper to state briefly the grounds of my concurrence in the result of the opinion of my brother Cooper in this case.

When this question of repeal of the former charter of the city of Memphis, and establishment of what is

known as the "Taxing District," was before this court
at the April term, 1879, in the case of *Luehrman* v.
*Taxing District,* 2 Lea, 425, I dissented from the
opinion of the majority of the court, holding the law
establishing the Taxing District unconstitutional, vio-
lative of the spirit as well as the letter of our State
Constitution. After careful review of the question, I
am more deeply impressed with the correctness of the
opinion then expressed, and of the impossibility of
working into our system so incongruous a conception
as the one known as a taxing district. The question
of the effect of the legislation then under consideration
on the contracts and liabilities of the city of Memphis
was not before the court, and no opinion was called
for on that question.

I confess that, if we concede that the charter of
the city had been repealed and there had been no
other corporate body established to take its place, on
the theory of the decisions of the Supreme Court of
the United States, as well as general current of au-
thority, I should have found the gravest difficulties in
holding any corporate body liable for debts of the
city—or rather, conceding the liability, in enforcing
such liability without a corporate organism upon which
the courts might operate in enforcing such liabilities.

But the opinion of the majority is the law in this
case, the matter, so far as the city of Memphis and
the Taxing District are concerned, is *res adjudicata,*
and however I might and would contest the proposi-
tion in any other case where such judgment had not
been had, I am compelled to follow it in this.

O'Connor *v.* City of Memphis.

This being the state of the case, and a new corporation created on the same day of the repeal of the old, taking its place over precisely the same territory and inhabitants, the very same sources of revenue being transferred to them, I feel compelled to agree with the conclusions of my brother Cooper in this case, and hold this last to be the successor in interest of the old corporation, and, as such, taking its place and responsibilities; therefore, it is proper to revive suits pending against the old corporation, against the Taxing District as a new municipal corporation, standing in the shoes of the former, which has been repealed.

I do not deem it necessary to go into a discussion of the several questions presented, but content myself with concurring with the conclusion reached, for the reasons given.

TURNEY, J.:

I concur in the foregoing opinion for similar reasons.

McFARLAND, J., delivered the following dissenting opinion:

This cause was pending in this court when the act of 1879 was passed repealing the charter of the city of Memphis, and also when a subsequent general act of the same session was passed, under which the same territory was reincorporated under the name of the "Taxing District." The question now is, whether the cause shall be revived and prosecuted against the new corporation. The novelty of the question grows

out of the peculiar features of the legislation referred to. It is expressly provided that the governmental agencies constituted under the new corporation shall have no power of taxation for any purpose. The taxation necessary for the new government is to be levied directly by the Legislature. Nor, in the language of the act, shall the new corporation "pay or be liable to pay any debt created by said extinct corporation, nor shall any of the taxes collected under the new act ever be used for the payment of any of said debts."

The public property owned by the old corporation is transferred to the new to be held for public uses, but no property liable to be taken under execution for the payment of debts was thus transferred; nor was the new corporation given any right to collect, receive or control the uncollected taxes due the old corporation, but all such rights were transferred to a receiver appointed by the Governor under the authority of the act, with specific directions as to the appropriation of these assets to the payment of pre-existing debts of the city.

This legislation has been before the Supreme Court of the United States with special reference to this latter provision, and it was held to be valid and free from constitutional objection: *Meriwether, receiver*, v. *Garrett.*

The controlling question, as I think, is whether the new corporation will be liable for the recovery should there be one, and whether it can be coerced by judicial process to pay the judgment rendered. I

do not comprehend the propriety of reviving the cause against the new corporation and proceeding to a decree against it, if we are forced to concede in the end that its authorities have no power under any circumstances to levy or collect the necessary taxes to pay the decree, or in any other manner to appropriate any funds that may legally come within their control to such payment. It is perfectly manifest, should there be a recovery, that the only mode of payment possible would be by levying and collecting taxes for the purpose, or by the appropriation of taxes previously levied. The corporation has no property, under these laws, liable to execution. We would be in an awkward predicament to render a decree that the complainant recover of the Taxing District a certain sum of money, and at the same time hold that the authorities of said corporation have not the right or authority to appropriate a single dollar of money that may come under their control to pay said recovery. If, as already said, the corporation can pay such a demand, it must either be by appropriating taxes levied by the Legislature or by levying and collecting other taxes. If it be not lawful for said corporate authorities to do either of these things, then it would not be lawful for them to pay the decree. If the charter under which they act gives them no power in the premises, it would be inconsistent for this court to order them to do what at the same time we say they have not the right or power to do. Courts often do no doubt render judgments which they have no practical means of enforcing, but they should never ren-

der judgments or make decrees which the parties may not lawfully comply with. The duty of paying judgments rendered against a municipal corporation must be performed by the officers and agents of the corporation; if to do so would violate the charter under which they act, they ought not to be ordered to do so. I cannot concur in the propriety of rendering a judgment against the new corporation merely as a means of fixing the amount of the complainant's debt so that he may have a "vantage ground" in seeking another remedy. The acts referred to do not make it the duty of any of the officers provided for under the new government to employ counsel or attend to the litigation pending against the old city. They are not required to perform any duty in reference to such suits. If it is merely to render a judgment ascertaining complainant's debt, it would be more consistent to render it against the old city of Memphis as if its charter had not been repealed. This might be, as said, "a mere mockery of justice," but not more so than to render the judgment against the new corporation when the latter cannot lawfully pay the judgment. I am therefore clearly of opinion that, before we can order this cause revived against the Taxing District, we must come to the conclusion *that if a judgment is rendered, the officers and agents, under the act creating said corporation, may lawfully pay the judgment by appropriating to that purpose the taxes levied by the Legislature, or by levying and collecting taxes for the purpose themselves, and if they refuse to do so they may be compelled by process of this court.* This

is the question from which it seems to me there is no escape.

From the provisions of the acts to which we have already referred, it will be seen that in order to hold that the corporate authorities under the new government can do either the one or the other, we must in some way get rid of or reverse the positive provisions of the act; that is to say, although the act says that the taxes levied by the Legislature shall not be by said authorities appropriated to the payment of the old debts of the city of Memphis, we must hold that, nevertheless, they may, and if necessary, shall be so appropriated; and although the act says the officers of the new corporation shall for no purpose have the power to levy taxes, that, nevertheless, they shall have the power, and if necessary, shall levy taxes to pay the debts of the old city of Memphis, although the act says the new corporation is not liable.

I concede that it has been repeatedly held that where the charter of a city or town is repealed and the same territory reincorporated under another name, and no provision made for the debts of the old corporation, it will be presumed, in the absence of anything to the contrary, that the Legislature intended that the new corporation shall be liable for the debts of the old, and shall have power to levy and collect taxes for the purpose of paying the debts: *Broughton* v. *Pensacola*, 93 U. S.; *Mount Pleasant* v. *Beckwith*, 100 U. S. These cases are, however, put expressly upon the ground that there was nothing in the acts creating the new corporations indicating a different in-

tent or making a different provision for the debts, or withholding from the new corporations the power to raise by taxation the means to pay the debts; and as the courts could not presume a purpose upon the part of the Legislature to repudiate the debts, the inference was fair and legitimate that the purpose was not to change the corporation with respect to its liability for the old debts, or the power of its authority to levy and collect taxes for the purpose of making payment. In the present case there is no room for presumption; the legislative intent is beyond question. The cases referred to (and all the leading cases and the strongest upon the subject) do not decide the present question either way. So far as any intimation is to be gathered from the reasoning, it is against the conclusion that the liability of the new corporation exists independent of or contrary to the legislative intent.

It has been most earnestly argued that as the new corporation embraces the same territory, people and property as the old, it is therefore necessarily the same corporation and liable for the previous debts. The territory, people and property embraced in a municipal corporation is one thing, the corporation (the legal entity) is another; but I predicate but little upon this technical distinction. *The question is, whether the powers and duties of the governing agencies, with respect to the debts and liabilities of the old corporation, remain the same as they were before.* The creditor has no rights against the property of citizens within the city except through taxation. Upon this

O'Connor *v.* City of Memphis.

the supreme court were unanimous in *Meriwether* v.
*Garrett.* So that, whatever may be the moral features
of the question, the liability of the new corporation
depends not upon the identity of the citizens and
property, but upon the question whether the govern-
ing agencies under the new corporation have the power
to levy or appropriate taxes to pay the debt. Is it
their duty to do so? For, I repeat, if this cause
is revived and a decree rendered against the Taxing
District, then this court must adjudge that the author-
ities of the Taxing District shall pay the decree, and
furthermore, that they must pay it by levying and
collecting taxes for the purpose, or by appropriating
taxes levied by the Legislature.

Then the question arises, how shall we hold that
the governing agencies of the Taxing District have
the power to levy taxes for any purpose, or appro-
priate the taxes levied by the Legislature for the pur-
pose of paying the debt, in the face of the positive
language of the legislative act referred to? I believe
it is agreed on all hands that "municipal corporations
are the mere instrumentalities of the State for the
more convenient administration of local government.
Their powers are such as the Legislature may confer,
and they may be enlarged, abridged or entirely with-
drawn at pleasure." This is the language of Mr.
Justice Field in *Meriwether* v. *Garrett*, and is more-
over the doctrine upon which the decision of this
court sustaining the constitutionality of these acts rests.
See *Luehrman* v. *Taxing District*, 2 Lea, 425. More-
over, it is conceded, I believe, on all hands, that

"the power of taxation is purely legislative, and cannot be exercised otherwise than under legislative authority." Upon this proposition, also, the supreme court were unanimous in *Meriwether* v. *Garrett;* and Mr. Justice Field says that "the repeal of a law under which a tax is levied before the tax is actually collected, puts an end to the tax." If, therefore, a municipal corporation is the mere creature of the Legislature—if it can exercise no powers except those conferred upon it—if the power of taxation be purely legislative—it must follow, that when the corporate authorities of a city levy a tax, they do so by authority conferred upon them by the Legislature, and certainly the power of taxation cannot exist in a corporate government to which the Legislature never granted that power.

The governing agencies of the Taxing District are wholly different from those existing under the old city charter. They are—1. A board of fire and police commissioners, consisting of three 'commissioners, one of whom is to be appointed by the Governor and one by the county court. 2. A committee on ordinances and local laws, to be known as "the legislative council." 3. A board of health. 4. A board of public works, to consist of five commissioners, two of whom are to be appointed by the Governor. The committee on local laws, or legislative council, is composed of the commissioners constituting the fire and police board and the board of public works.

Shall we hold that some one of these governing agencies, as they are termed in the act, shall be com-

O'Connor *v.* City of Memphis.

pelled to levy a tax to pay complainant's debt, notwithstanding such a proceeding is wholly foreign to their duty as prescribed by the statute?

The only ground upon which it has been argued that this can be done, is that these acts violate the provisions of the State and Federal constitutions against impairing the obligations of contracts. That is to say, at the time the complainant's debt was created the law gave him a remedy against the city, not only to obtain judgment, but to compel the levy and collection of taxes to pay it. To change the corporate government and create new agencies without this power of taxation, is to deprive the creditor of a remedy he had before, and therefore impairs the obligation of the contract.

Suppose this proposition be conceded—what is the result? Does it result that the authorities of the Taxing District have the power of taxation that has been denied them? It seems to me clearly not. The clauses of the Constitution operate as *restrictions* upon legislative power, and when an act violates the restriction the court can declare it void; but this leaves the law as it stood before—the void act cannot become an affirmative one. The courts cannot say that the Legislature ought, in obedience to this constitutional *restriction*, to have granted the taxing power to the new government, and therefore we will hold that they did grant the power. I think it would be more logical to hold, on this theory, that the taxing power in favor of the creditor remained where it existed before, that is, in the authorities under the old

48—VOL. 6.

city government. If it could not, as against the creditor, be taken from them, the act which attempted to do so was void; but we cannot obviate the void act by putting into the new act the provision that ought to have been there. In other words, we cannot say that the Legislature has no right to take from a creditor an existing remedy without providing a new one, and therefore we will hold that the Legislature did provide the new remedy, and the very remedy which it in terms refused to provide.

It seems to me that the only escape from this conclusion is to assume that the "taxing district of Memphis" is in reality the same corporation as the "city of Memphis," that the name merely has been changed, and that therefore the question is precisely as if, without repealing the old city charter, the Legislature had attempted simply to repeal the power of taxation previously existing under the old city government for the purpose of paying its debts. If this had been done, I concede that the repealing act would be void, as impairing the obligation of contracts, in that it deprived the creditor of the remedy existing at the time his debt was created without providing any other remedy, and therefore, notwithstanding the repeal, the right to levy and collect the tax would still exist in the city authorities, and the creditor would be entitled to the process of *mandamus* to compel a levy and collection of the tax. It was so held in the case of *Van Hoffman* v. *The City of Quincy*, 4 Wall., and in the recent case of the *U. S. ex rel. Wolf* v. *City of New Orleans.*

O'Connor *v.* City of Memphis.

But I think it would be purely arbitrary to assume that the old and the new government of the city are the same corporations with respect to the question we are considering. As we have seen, the old city charter is repealed by one act, the new government is organized under a wholly separate and distinct act, and one which is general in its nature and under which any other city in the State with a given population may be organized, and by which the entire system is changed and new agencies created with wholly different powers and duties. And the question is not whether the repealing act, taking from the old city authorities their power of taxation and thereby depriving the creditor of his remedy, is unconstitutional and void, but it is whether the subsequent act authorizing the organization of "taxing districts," and under which the city of Memphis was reorganized, is unconstitutional in that part which withholds from the governing agencies thereby created the power of taxation. And even concede this to be a violation of the Constitution, is it one that the courts can remedy? Can we put into the act the provision that ought to have been there? If the Legislature pass an unconstitutional act, we may declare it void and leave the law as it stood before; but if the Legislature fail to pass a law, or to insert in an act a provision which the Constitution requires, the courts cannot supply the omission. If the legislative branch of the government should disregard its constitutional obligations and refuse to levy the necessary taxes to pay the public debts and meet the current expenses, there would be

no remedy in the courts. So that, in my opinion, whatever view we may take of the act repealing the charter of Memphis as affecting the rights of creditors, we cannot cure the wrong by inserting in the subsequent act the provision which we might suppose ought to have been inserted. We cannot compel either the "board of fire and police commissioners," the "legislative council," the board of health, or board of public works, or any or all of these agencies of the Taxing District, to levy a tax. It seems to me it would be difficult to determine which one of these agencies shall perform the duty. However, if we assume legislative functions there will be no difficulty.

I am conscious of the force of the argument against repudiation, and I also concede that to follow the apparently logical sequence of what I have said, and proceed against the old city of Memphis as if the charter had not been repealed, might now be impractical. No one of its officers probably could now be found upon whom the process of *mandamus* could be made effectual, and the process of the court would be baffled and come to naught. This was the attitude in which the courts found themselves in the case of *Rees* v. *City of Watertown*, 19 Wall., where, as often as the process of *mandamus* was sued out against each successive board of the city authorities they resigned and refused to act, and the courts were powerless.

While all this is true, it is no reason for the court to attempt to furnish to the creditor a remedy not provided by law.

It is, therefore, in my opinion, not necessary to

O'Connor *v.* City of Memphis.

enter further into the question as to how far the constitutional rights of creditors have been impaired by the legislation in question. The Legislature has assumed that financial bankruptcy and ruin had overtaken the city of Memphis. It therefore repealed its charter, took charge of its uncollected taxes, and assumed its debts. Whether the remedy provided, or to be provided, for the creditors will be sufficient, or whether the purpose was to repudiate the debts, we cannot know, but the latter purpose cannot be presumed. Debts of this character are in a sense public debts, and rest for their payment in some sense upon the public faith and honor.

For these reasons I dissent from the opinion of the majority of the court.