Elizabeth M. MORRIS, Appellant,

v.

Charles W. GROSS, Appellee.

Supreme Court of Tennessee.

Oct. 27, 1978.

Walter Buford, Memphis, for appellant.

John J. Thomason, Kenneth R. Masterson, Memphis, for appellee; Thomason, Crawford & Hendrix, Memphis, of counsel.

## OPINION

BROCK, Justice.

### I

The plaintiff, Elizabeth M. Morris, sues the defendant, Charles W. Gross, a physician, for damages for personal injuries alleged to have resulted from malpractice on the part of the defendant.

The defendant, in his answer, pled that the plaintiff's action was barred by the special statute of limitations of sixty days contained in Section 4(g) of Chapter 759 of the Public Acts of 1976, now codified as T.C.A. § 23–3403(g). The plaintiff responded to this defense by a motion for partial summary judgment in which she asserted that Section 4(g) is invalid, in that it violates the equal protection and due process provisions of the federal and state constitutions.

After a hearing, based upon the complaint, the answer, the plaintiff's motion for partial summary judgment and argument of counsel, the trial judge concluded that the special sixty days statute of limitations was valid and applicable to the plaintiff's claim; and since the complaint had not been filed within the sixty day period provided by that statute, he concluded that the plaintiff's claim was barred. Accordingly, he dismissed her complaint. She appeals from the order of dismissal.

The complaint alleges that plaintiff's cause of action accrued on October 1, 1975, at which time the "Medical Malpractice Review Board and Claims Act of 1975," T.C.A., § 23–3401 et seq., was in effect and controlled the plaintiff's claim. That Act then provided, in pertinent part, as follows:

"Section 23–3403 . . .

\* \* \* \* \* \*

(b) No medical malpractice action shall be filed in any court within this state unless the plaintiff in such action shall

have complied with the provisions of this chapter requiring a review of the claim upon which such action is based by the Medical Malpractice Review Board having jurisdiction over the matter.

(c) Prior to the filing of a medical malpractice action, the claimant shall give written notice to the board . . . . [S]imultaneously a copy of said notice shall be sent by registered or certified mail to each party against whom the claim is or may be asserted. Such notices must be given within the time for filing an action as prescribed by the applicable statute of limitations. *The giving of such notices shall toll the running of the statute until such time as the board shall have completed its hearing, made its recommendations, and given the parties an opportunity to act thereon as hereinafter provided.* (Emphasis added.)

\* \* \* \* \* \*

(e) . . . if either party rejects the recommendations of the board, or, in the event the parties accept the recommendations of the board but fail to execute an agreement within thirty (30) days, then after the expiration of such thirty (30) day period, the claimant may proceed to file his malpractice action in any court having jurisdiction of the same."

The plaintiff complied with the requirements of the statute, as it then existed, by filing her written claim with the Medical Malpractice Review Board on November 5, 1975, and, in due course, the defendant filed his written response thereto. The Board assumed jurisdiction of the claim and, by a letter dated March 29, 1976, notified the parties that a hearing would be set in the near future and that the parties ". . . will be notified of the date and place of the hearing."

However, before a hearing was conducted, the legislature enacted Chapter 759 of the Public Acts of 1976 which repealed the above quoted provisions of the 1975 Act and, in lieu thereof, provided that a malpractice claim must first be filed in the appropriate court, instead of with the Board, and that, after such case should become at issue, the judge would refer the claim to the Malpractice Review Board for review. It was provided that the Board would conduct a hearing and make recommendations to the parties but that, if the recommendations of the Board were not accepted, the claimant might proceed with his malpractice action in the court in which suit had been filed.

Section 4 of the 1976 Act is of particular relevance to the case before us, in that, it dealt specifically with claims, such as that of the plaintiff, which were pending before the Malpractice Review Board on May 1, 1976, and had not been filed in court. Section 4 provides as follows:

"Any person who has prior to May 1, 1976, timely filed a malpractice claim or claims with the board but had not as of that date filed a malpractice action against the health care providers involved shall, not later than sixty (60) days after May 1, 1976, file his or her malpractice action or actions in the proper court. After such action or actions are at issue the court shall refer the action to the board to proceed as set forth herein. The completion of the aforesaid proceedings in court shall not delay the review of malpractice claims pending before the board on or before May 1, 1976. The timely filing of such claim or claims shall continue to toll the running of the applicable statute of limitations for said sixty (60) day period."

Although the 1976 Act had the effect of terminating the jurisdiction of the Medical Malpractice Review Board over claims pending before it on May 1, 1976, and required that such claims be filed in court within sixty days immediately following May 1, 1976, or be forever barred, the Act contained no provisions for giving notice to claimants of such dismissals and of the necessity for filing such claims in court within sixty days.

The plaintiff, having timely filed her claim before the Board as directed by the

1975 Act, awaited the promised notification from the Board that a hearing on her claim had been set. She had no notice of the passage of the 1976 Act and of the effect upon her claim of Section 4 of that Act until the fall of 1976, after the new sixty day period of limitations had run. She filed her complaint in this action on November 5, 1976.

## II

■ We hold that the portion of the 1976 Act, now codified as T.C.A., § 23-3403(g), quoted *supra*, is invalid. In our view, it deprives the plaintiff and other claimants who had claims pending before the Board on May 1, 1976, of property without due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States and the law of the land clause of Article I, Section 8 of the Constitution of Tennessee. Moreover, it also violates the mandate of Article I, Section 20 of the Constitution of Tennessee, "that no retrospective law, or law impairing the obligation of contracts, shall be made."

■ It is well settled that a vested right of action is as much property as are tangible things and is protected from arbitrary legislation, whether such right of action be based upon the law of contracts or upon other principles of the common law. *Mabry v. Baxter*, 58 Tenn. 682 (1872); *Collins v. East Tennessee, Virginia & Georgia Railroad Company*, 56 Tenn. 841 (1872); *Coombes v. Getz*, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866 (1932); *Pickering v. Peskind*, 43 Ohio App. 401, 183 N.E. 301 (1930); 16A C.J.S. *Constitutional Law* § 614 (1956). Such a vested right of action enjoys the full protection of the due process clauses of the Federal and State Constitutions. *See State v. Louisiana Oil Refining Corporation*, 176 So. 686 (La.App.1937), *motion denied*, 177 So. 476 (La.App.1937), *aff'd* 304 U.S. 197, 58 S.Ct. 832, 82 L.Ed. 1287 (1938), *rehearing denied*, 304 U.S. 589, 58 S.Ct. 1044, 82 L.Ed. 1549 (1938).

"Vested rights include not only legal or equitable title to enforcement of a demand but also an exemption from new obligations created after the right has vested. . . . The words [vested rights] are used as implying interests which it is proper for the state to recognize and protect and of which the individual could not be deprived arbitrarily without injustice." 16 Am.Jur.2d *Constitutional Law* § 421 (1964).

■ We recognize the general rule that no one has a vested right in a particular remedy for the enforcement of a right of action and, thus, that the legislature ordinarily may change existing remedies for the enforcement of rights, including those which have already vested, without denying due process of law, provided, a substantial remedy to redress that right by some effective procedure is given. *Brandon v. Warmath*, 198 Tenn. 38, 277 S.W.2d 408 (1955); *Hope v. Johnson*, 10 Tenn. 123 (1826); *Gibbes v. Zimmerman*, 290 U.S. 326, 54 S.Ct. 140, 78 L.Ed. 342 (1933); 16A C.J.S. *Constitutional Law* § 614 (1956).

■ It is equally clear, however, that principles of due process forbid the legislature to abolish a remedy that has been so far carried into operation that the substantive rights of the litigants would be adversely affected if the remedy, as to them, were abolished. *Fisher's Negroes v. Dabbs*, 14 Tenn. 119 (1834); *Mabry v. Baxter*, *supra*; *Ruecking Const. Co. v. Withnell*, 269 Mo. 546, 191 S.W. 685 (1917), *aff'd* 249 U.S. 63, 39 S.Ct. 200, 63 L.Ed. 479 (1919); *McSurely v. McGrew*, 140 Iowa 163, 118 N.W. 415 (1908); *Commonwealth v. Brown*, 327 Pa. 136, 193 A. 258 (1937); *Koger v. Ball*, 497 F.2d 702 (4th Cir. 1974).

In the *Dabbs* case, *supra*, this Court held that an 1831 statute, which directed the chancellors of the state to dismiss all pending bills filed by slaves in the chancery courts to gain their freedom, as authorized by an 1829 statute, and which directed the clerks to send the records in such cases to the county court for trial "as if originally filed therein," was unconstitutional and void because it denied to such plaintiffs the remedial rights that vested when they filed their bills in the chancery court.

In the *Mabry* case, *supra*, this Court had before it a statute enacted in 1871 that gave to parties jointly sued the right to sever and, if not sued in the county of their residence, the right upon demand to have a change of venue to the county of their respective residences. Prior to the enactment of the 1871 act, defendants jointly sued did not have such an absolute right to sever nor the right, if not sued in the county of their residence, to have a change of venue to the county of their respective residences upon demand but were limited to requesting such relief from the trial judge who had discretion to deny or grant it. This Court held that the 1871 act, when applied to a suit pending at the time it became effective on December 11, 1871, was unconstitutional because (1) it did not furnish to the plaintiff a remedy substantially the same as that in force when his suit was commenced and (2) was a "judicial," rather than a "legislative" act. *See also Henderson v. Ford*, Tenn., 488 S.W.2d 720 (1972).

In *Commonwealth v. Brown*, *supra*, a statute which attempted to abolish a municipal court without any provision for the protection of rights vested by litigation in such court was held to deny due process of law to the litigants and, therefore, invalid.

In the *McSurely* case, *supra*, the Iowa court considered an act of the legislature which declared void any action brought on a county treasurer's bond. The court held that the act could not be constitutionally applied to an action on a county treasurer's bond which was pending at the time the statute became effective. The Iowa court said:

"After action is brought it is certainly beyond the power of the Legislature to declare that action void and the court in which it is pending without jurisdiction. Such matters are purely judicial, and not legislative, and under our three-department system of government it is inadvisable for one to assume the powers, duties, or responsibilities of the other. When action is once commenced the question of jurisdiction is purely a judicial one, and the Legislature should not attempt to usurp the functions of the judiciary by such an act as is now under consideration." 118 N.W. at 417, 418.

In the *Ruecking Const. Co.* case, *supra*, the Missouri court considered a statute which required that notice be lodged with the city comptroller within ten days after the institution of an action to enforce a "special tax bill." The court held that the act could not constitutionally be applied retroactively to a suit instituted prior to its passage and, in the course of its opinion, said:

". . . We have held in no uncertain terms that a statute which takes away or impairs a right acquired under existing laws or creates a new obligation or imposes a new duty or attaches a new disability in respect to transactions or considerations already consummated must be deemed retrospective in its operation, and hence violative of section 15 of article 2 of the state Constitution." 191 S.W. at 688.

Without any notice whatever to the litigants, Section 4 of the 1976 Act before us had the effect of ousting the Medical Malpractice Review Board of its jurisdiction over those claims pending before it on May 1, 1976, or of dismissing such claims, thereby depriving the plaintiff and other such claimants of the benefit of the provisions of Subsection c of the 1975 Act, T.C.A., § 23–3403, that:

". . . the giving of such notices shall toll the running of the statute until such time as the board shall have completed its hearing, made its recommendation, and given the parties an opportunity to act thereon, as hereinafter provided."

Also, Section 4 of the 1976 Act purported to create a new statute of limitations of sixty days and started the running of this new period of limitations on May 1, 1976, without providing for the giving of notice to the plaintiff and other claimants that their rights were thus affected.

■ Although the legislature ordinarily may reduce the statute of limitations and make the reduced period of limitations applicable to the rights of action which have

already accrued, provided the new period of limitations accords to claimants a reasonable time within which to file suit, it cannot, by legislative fiat, dismiss an action already pending in the appropriate tribunal, in this case, the Medical Malpractice Review Board, and provide that such action must be filed in court within sixty days of such dismissal or be forever barred, without notice to the owners of claims thus affected. Such a statute obviously denies due process of law to the claimants and also violates the above quoted constitutional provision that no retrospective laws shall be passed.

> "Although, . . . existing causes of action may be affected by statutory amendments whereby procedural limitation periods are shortened or lengthened, the legislature has no power to interfere with vested rights of action after suit has been commenced." 51 Am.Jur.2d *Limitation of Actions* § 28 (1970) citing *Slover v. Union Bank*, 115 Tenn. 347, 89 S.W. 399 (1905); *Shaurette v. Capitol Erecting Co.*, 23 Wis.2d 538, 128 N.W.2d 34 (1964).

*See also Bates v. Shapard*, 224 Tenn. 672, 461 S.W.2d 946 (1970).

■ The parties who litigate claims before the courts or administrative tribunals are charged with notice of steps taken by the court or administrative tribunal or by opposing parties in the regular course of such proceedings, but they cannot be expected to anticipate and will not be charged with notice that the legislative branch of government will attempt to interfere in such proceedings and effect a dismissal thereof.

■ When the plaintiff filed her claim with the Medical Malpractice Review Board, she thereby acquired a vested right in the provision of T.C.A., § 23–3403(c), that such filing ". . . shall toll the running of the statute until such time as the board shall have completed its hearing, made its recommendations, and given the parties an opportunity to act thereon as hereinafter provided." In other words, she acquired a right that the statute of limitations would not begin to run again on her right of action until the board had disposed

of her claim in due course as provided by the 1975 Act. We hold that, under the above cited authorities, Section 4 of the 1976 Act is invalid because it deprived the plaintiff of this right without notice with the result that the new sixty day statute of limitations ran before she learned of its existence. Such a deprivation is a denial of due process.

Moreover, Section 4 of the 1976 Act, in dismissing the plaintiff's claim before the Board as of May 1, 1976, in starting the statute of limitations to run on that date and in repealing the limitation provisions which were in effect at the time plaintiff filed her claim before the Malpractice Review Board and substituting, in lieu thereof, a new sixty days period of limitations, is a retrospective law which is prohibited by Article I, Section 20 of the Constitution of Tennessee.

■ Retrospective laws are generally defined, from a legal standpoint, as those which take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed. *Fisher's Negroes v. Dabbs, supra; Mabry v. Baxter, supra; O'Connor v. City of Memphis*, 74 Tenn. 730, 739 (1881); *Roberts v. Knoxville Transit Lines*, 36 Tenn.App.595, 259 S.W.2d 883, 886 (1953).

■ Since Section 4 of the 1976 Act is invalid, the plaintiff's action was not barred by the sixty days limitation therein provided. Instead, plaintiff's right of action was governed by the limitation provisions of the 1975 Act, T.C.A., § 23–3401 et seq., as it was prior to the enactment of Chapter 759 of the Public Acts of 1976, and by T.C.A., § 28–304. Under those provisions she had one year from the date her cause of action accrued, T.C.A., § 28–304, within which to file her suit in court, as extended, however, by provisions of T.C.A. § 23–3403, that limitations were tolled from the date her claim was filed before the Medical Malpractice Review Board until the Board should dispose of her claim. Since the Board did not

dispose of her claims before she filed suit in court, it follows that the suit was timely filed.

The judgment of the trial court is reversed and the cause is remanded for appropriate further proceedings. Appellee will pay the costs incident to this appeal.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.