**STANDARD PIPE & SUPPLY, INC., Plaintiff–Appellant,**

v.

**FIRST CITY SERVICE CORPORATION, G. Carlton Salons, Inc., American Acoustical, Inc., et al., Defendants–Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Feb. 26, 1992.

Permission to Appeal Denied by Supreme Court May 26, 1992.

Stephen J. Lusk, Knoxville, for plaintiff-appellant.

William S. Lockett, Jr., with Kennerly, Montgomery & Finley, Knoxville, for defendants-appellees.

## OPINION

SANDERS, Presiding Judge, Eastern Section.

The Plaintiff appeals from a summary judgment in favor of the Defendants in Plaintiff's suit to enforce its mechanics' and materialmen's lien pursuant to T.C.A. § 66–11–101, *et seq.*

As pertinent here, the Plaintiff–Appellant, Standard Pipe & Supply, Inc. (Standard) filed suit to enforce a mechanics' and materialmen's lien against a parcel of commercial property in Knox County for materials furnished for improvements made on the property. The following pertinent facts are not in dispute: (1) The construction of the improvements on the property began prior to July 1, 1990; (2) The Plaintiff, Standard, furnished materials which were incorporated in the property both prior to and after July 1, 1990; (3) The amount of the lien claim is approximately $8,500 but there is no showing of how much of the claim accrued prior to or after July 1, 1990; (4) The last materials were furnished on August 1, 1990; (5) Standard filed its notice of lien pursuant to T.C.A. § 66–11–115(b) on October 19, 1990; and (6) Standard filed its suit to enforce its lien pursuant to T.C.A. § 66–11–115(c) on November 9, 1990.

T.C.A. § 66–11–115(a), prior to July 1, 1990, as pertinent here, provides as follows:

(a) Every journeyman or other person contracted with or employed to work on the buildings, fixtures, machinery, or improvements, or to furnish materials for the same, whether such journeyman, furnisher, or other person was employed or contracted with by the person who originally contracted with the owner of the premises, or by an immediate or remote subcontractor acting under contract with the original contractor, or any subcontractor, shall have this lien for his work or material.

Section (b) provides notice of claiming a lien must be given within 90 days after work is completed, etc., and Section (c) provides suit shall be filed within 90 days after notice is given.

T.C.A. § 66–11–115(a) was amended as of July 1, 1990, by adding to the end of the paragraph, after the words "shall have this lien for his work or material," the following: "provided, that the subcontractor, laborer, or material supplier satisfies all of the requirements set forth in § 66–11–145, if applicable." *No changes were made in Sections (b) and (c).*

Section 66–11–145, referred to in the amendment, was also added as of July 1, 1990, and, as pertinent here, provides:

(a) Every subcontractor, laborer or materialman contracted with or employed to work on buildings, fixtures, machinery, or improvements, or to furnish materials for the same, except one-family, two-family, three-family and four-family residential units, whether such subcontractor, laborer or materialman was employed by or contracted with the person who originally contracted with the owner of the premises or by an immediate or remote subcontractor acting under contract with the original contractor, or any subcontractor, shall provide, within sixty (60) days of the last day of the month within which work, services or materials were provided, a notice of nonpayment for such work, services or materials to the owner and contractor contracting with the owner if its account is, in fact, unpaid. The notice, which shall be served by registered or certified mail, return receipt requested, shall contain:

(1) The name of the subcontractor, laborer or materialman and the address to which the owner and the contractor contracting with the owner may send communications to the subcontractor, laborer or materialman;

(2) A general description of the work, services or materials provided;

(3) A statement of the last date the claimant performed work and/or provided services or materials in connection with the improvements; and

(4) A description sufficient to identify the real property against which a lien may be claimed.

(b)....

(c) A subcontractor, laborer or materialman who fails to provide the notice of nonpayment shall have no right to claim a lien under this chapter, except this section shall not apply to a certain amount or percentage of the contract amount which is retained to guarantee performance of the subcontractor, laborer or materialman.

The owner of the property, Defendant–Appellee G. Carlton Salons, Inc., and the Defendant–Appellee, contractor American Acoustical, Inc., filed motions for summary judgment. As a basis for their motions, they said Standard had failed to give the 60–days' notice as required by § 66–11–145 and, due to this failure to give the required notice, under subsection (c) it has "no right to claim a lien." They both supported their motions with affidavits, saying they had never received a notice of nonpayment from Standard.

Standard responded to the motions, saying § 66–11–145 was not applicable to its lien in that construction of the improvements for which it furnished materials commenced prior to July 1, 1990, and, pursuant to § 66–11–104(a), its lien related to and took effect from the visible commencement of operations. It said it had furnished materials prior to July 1, 1990, as shown on invoices attached to its complaint. It also insisted the notice of lien filed October 19 constituted a substantial compliance with the notice requirements of § 66–11–145 and it filed the affidavits of Mr. A.L. Witt, showing the notice of lien was sent to American Acoustical and G. Carlton Salons by certified mail, return receipt requested. The affidavit of Jerry Nelson was also filed to show the last materials were delivered to the project on August 1, 1990.

Upon the hearing, the chancellor sustained the motions for summary judgment, holding the "Plaintiff had failed to comply with the mandatory requirements of T.C.A. 66–11–145(a) requiring a materialman such as Plaintiff to file a notice of nonpayment, and Plaintiff was not entitled to a mechanic's lien, and Plaintiff is not entitled to enforce this attachment action pursuant to

T.C.A. § 66–11–101, et seq.," and dismissed the suit.

The Plaintiff has appealed, saying the court was in error. It insists the court erroneously applied the provisions of T.C.A. § 66–11–145 retroactively to extinguish its vested lien right prior to July 1, 1990, by virtue of T.C.A. § 66–11–101, *et seq.* prior to its amendment. We agree, and reverse for the reasons hereinafter set forth.

■ Appellees contend the amendment has not been applied retroactively, but rather, only applied to antecedent facts. They cite *Westinghouse Electric Corporation v. King*, 678 S.W.2d 19 (Tenn.1984) for the general rule "that a statute is not retrospective simply because it relates to antecedent facts." *Id.* at 26. Yet that case notes that the tax statute at issue was applied by the commissioner only for activities engaged in *after* the statute's effective date. It then cites a case which again dealt with the tax statute's being applied to events occurring *after* the statute's effective date. We think Appellees' reliance on *Westinghouse* is misplaced.

Appellees also contend the amendment here in issue is merely procedural and therefore may be applied retroactively. They cite *Saylors v. Riggsbee*, 544 S.W.2d 609 (Tenn.1976) as supportive of this contention. *Saylors*, however, also says:

The usual test of the "substantive" or "procedural" character of a statute for this purpose is to determine whether or not application of the new or amended law would disturb a vested right or contractual obligation. *Mid–South Milling Co., Inc. v. Loret Farms, Inc., supra* [521 S.W.2d 586 (Tenn.1975)]; *National Life & Accident Insurance Co. v. Atwood*, 29 Tenn.App. 141, 194 S.W.2d 350 (1946). The test of retroactivity is well amplified by a Kansas case, *Jones v. Garrett*, 192 Kan. 109, 386 P.2d 194 (1963) which describes "procedure" as: "[T]he mode or proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right, and which by means of the proceeding, the court is to administer—the

machinery, as distinguished from its product...."

Since the application of § 66–11–145 has the effect of destroying a vested right of Standard which it had prior to July 1, 1990, it cannot be said it was procedural.

We think the case of *Morris v. Gross,* 572 S.W.2d 902 (Tenn.1978) is controlling in the case at bar. In *Morris,* a plaintiff sought to sue a physician for malpractice. She filed a claim with the medical malpractice review board on November 5, 1975, which was the proper course of action under the Medical Malpractice Review Board and Claims Act of 1975. Under that Act, filing with the board tolled the malpractice statute of limitations. T.C.A. § 23–3403(c). The malpractice review board assumed jurisdiction of plaintiff's claim and, by letter dated March 29, 1976, notified the parties a hearing would be set in the near future and the parties would be notified of the date and location of the hearing. In the interim, the legislature repealed the Medical Malpractice Review Board and Claims Act of 1975 by passing the Medical Malpractice Review Board and Claims Act of 1976 (the New Act). Section 4 of the New Act provided "that any person who has prior to May 1, 1976, timely filed a malpractice claim or claims with the Board, but had not as of that date filed a malpractice action against the health care providers involved, shall, not later than sixty days after May 1, 1976, file his or her malpractice action or actions in the proper court." *Morris,* 572 S.W.2d at 904. The Act contained no provisions for giving notice to claimants of such dismissals or of the necessity for filing such claims in court within sixty days. Plaintiff did not have notice of, and thus did not comply with, Section 4 of the New Act. The court held that Section 4, while merely changing the procedure for filing medical malpractice claims, had the sub-

stantive effect of removing plaintiff's remedy, and thus it could not be applied retroactively. It said: "When the plaintiff filed her claim with the [board] she thereby acquired a vested right in the provision of T.C.A., 23–3403(c), that such filing '... shall toll the running of the statute until such time as the board shall have completed its hearing....'" *Id.* 572 S.W.2d at 907. "It is well settled that a vested right of action is as much property as are tangible things and is protected from arbitrary legislation, whether such right of action be based upon the law of contracts or upon other principles of the common law." (Citations omitted.) And, "It is equally clear, however, that principles of due process forbid the legislature to abolish a remedy that has been so far carried into operation that the substantive rights of the litigants would be adversely affected if the remedy, as to them, were abolished." (Citations omitted.) *Id.* at 905.

Similarly, Standard had a vested right under T.C.A. § 66–11–115 to a materialman's lien for goods delivered prior to July 1, 1990. The retroactive application of T.C.A. § 66–11–145 effectively abolishes that right, which is not permissible.

The issues are found in favor of the Appellant. The decree of the chancellor is reversed and the case is remanded to the trial court for a trial on its merits. The cost of this appeal is taxed to the Appellees.

FRANKS and McMURRAY, JJ., concur.