Jennifer Kay Brumit MATHIS and her husband, Barry L. Mathis, Plaintiffs-Appellants,

v.

ELI LILLY AND COMPANY, Defendant-Appellee.

No. 81–5803.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 19, 1982.

Decided Oct. 7, 1983.

Samuel B. Miller, II (argued), Weller, Miller, Carrier & Miller, Johnson City, Tenn., for plaintiffs-appellants.

J. Paul Coleman, Herndon, Coleman, Brading & McKee, Johnson City, Tenn., Timothy A. Pratt (argued), Shook, Hardy & Bacon, Kansas City, Mo., for defendant-appellee.

Before LIVELY, Chief Judge, and MARTIN and WELLFORD, Circuit Judges.

WELLFORD, Circuit Judge.

This case was filed in a Tennessee state court by Mrs. Jennifer Mathis, joined in the suit by her husband, Barry Mathis, seeking damages for personal injury due to her exposure to diethylstilbestrol (DES), a drug developed by Eli Lilly as a synthetic hormone to prevent miscarriages. It is alleged that Mrs. Mathis' mother took DES in May, 1955, while pregnant without knowledge that the drug DES may cause cancer in her offspring. Mrs. Mathis alleges that she did not know she had developed cancer (of the cervix) until July, 1980, some twenty-five years after the product was purchased and used by her mother during her pregnancy. Defendant-appellee Lilly filed a motion for summary judgment in the case, relying upon provisions of Tenn.Code Ann. § 29-28-103, which was originally enacted in 1978, and amended in 1979 by the addition of Section (b). The statute provides in its entirety:

> 29-28-103. *Limitation of actions—Exception.*—(a) Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by §§ 28-3-104, 28-3-105, 28-3-202 and 47-2-725, but notwithstanding any exceptions to these provisions it must be brought within six (6) years of the date of injury, in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption, or within one (1) year after the expiration of the anticipated life of the product, whichever is the shorter, except in the case of injury to minors whose action must be brought within a period of one (1) year after

attaining the age of majority, whichever occurs sooner.

(b) The foregoing limitation of actions shall not apply to any action resulting from exposure to asbestos.

The trial court granted appellee's motion for summary judgment and appellants appeal. They argue that the statute violates Article 1, Section 20, and Article 1, Section 8, of the Tennessee Constitution, as well as the Fourteenth Amendment to the United States Constitution.

While the Tennessee statute in question imposes generally a ten-year limit on bringing actions against a manufacturer or seller such as Lilly, dating from the time that its product was "first purchased for use," there are exceptions written in the law to this general limitation. The first exception may lessen the period of repose if the "anticipated life of the product" is less than nine years, because the action would then have to be brought within a year after the expiration of the anticipated life. The next exception applies in the case of injury to minors to make it clear that this statute does not abrogate the usual special consideration given to minors to extend the period in which they may sue to one year after attaining the age of majority.[1] Thus, it may have been possible for appellant, under this statute, if valid as written, to have sued at any time within nineteen years after her birth if an injury had allegedly occurred within that time, instead of ten years after May, 1955, when the DES was purchased for use.

A third exception to the general ten-year limit was adopted by the 1979 amendment to the Act in question by the addition of

section (b), which excepts "any action resulting from exposure to asbestos."

In his ruling granting appellee's motion, the trial judge noted that "plaintiffs set forth their constitutional theories in a 6 page brief."[2] He cited only two Tennessee state court decisions and six federal court cases in his order granting judgment for Lilly, which is the basis for this appeal. Appellants' brief cites only one Tennessee case (different from the two mentioned in the opinion and order appealed from) and three federal cases, and no other authorities. If this Court were to decide the case based on the precedents cited by the trial court and by appellants, the decision may not have been as detailed, but we must look beyond these cited authorities in deciding the difficult issues involved.

While we have found it necessary to look beyond the authority cited by the parties, we have *not* considered, and do not decide, issues which the parties did not raise and brief. Thus, we intimate no opinion on the constitutionality of the challenged statutes on other grounds, not raised and not discussed herein.[3]

## CLAIM OF UNCONSTITUTIONALITY UNDER THE FOURTEENTH AMENDMENT

Appellants cite two cases in their argument that the Tennessee law violates their due process rights and "public policy." The first of these cases, *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), involved coverage under the Federal Employers' Liability Act (FELA) and the Boil-

1. Under the statute in question, an action must be brought within six years of the date of injury. But, see *Tate v. Eli Lilly & Co.,* 522 F.Supp. 1048 (M.D.Tenn.1981), which holds that the "whichever occurs sooner" language of the statute at the end of section (a) is a nullity.

2. In this appeal, plaintiffs-appellants expanded the size of their brief to eleven pages, excluding a copy of this Court's slip opinion in *Buckner v. GAF Corp.,* 659 F.2d 1080 (1981), a case cited by the District Court below.

3. We note in particular the federal and state equal protection problems in the statutory exemption for asbestos-related suits. We note as well the recent decisions of several state supreme courts declaring unconstitutional similar statutes on the basis of the "open courts" provisions of their respective state constitutions. *See* Article 1, Section 8, of the Tennessee Constitution, and *Lankford v. Sullivan, Long and Hagerty,* 416 So.2d 996 (Ala.1982); *Diamond v. E.R. Squibb & Sons,* 397 So.2d 671 (Fla.1981).

<br>

er Inspection Act.[4] These consequences, the court held, could not be "reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of invasion of legal rights."

In its discussion of this issue in a workman's benefit statute, the Supreme Court cited only two cases, one interpreting the California Workmen's Compensation Act,[5] the other interpreting the Missouri statute of limitations at issue in *Urie*.[6] The federal statutes involved, giving a remedy beyond that provided at common law, required this liberal construction to prevent application of a statutory bar when plaintiff would have found it difficult to establish exactly when "notice of invasions of legal rights" occurred during the course of his long railroad employment. The statute and decisions involved workmen's compensation benefits and emphasized liberality of construction for benefit of employees who suffered injury or illness in connection with occupational hazards.

The argument made by appellants has been presented to a federal court in Tennessee after the enactment of Tenn.Code Ann. § 29–28–103, formerly Tenn.Code Ann. § 23–3703, in *Buckner v. GAF Corp.*, 495 F.Supp. 351 (E.D.Tenn.1979), an asbestos case.

The Buckners contend that the application of the unamended TCA § 23–3703 in a manner so as to bar their claims would be unconstitutional because such an interpretation of the Act denies them any opportunity to pursue a remedy for the injuries they allegedly sustained. They argue that they should be given "a reasonable time" from the effective date of the Act in which to pursue their "existing cause of action."

*Id.* at 353. Judge Frank Wilson considered the argument carefully in relation to an earlier decision made in his court on a similar issue, but involving a different Tennessee statute of limitations, and cited a number of Tennessee cases. He concluded that the Tennessee ten-year bar applied to this 1979 filing where the products involved, allegedly causing asbestosis, had been sold for use no later than 1965.[7] Judge Wilson's decision was unanimously affirmed by this Court in an unpublished order, No. 80–5329, May 11, 1981, joined in by Chief Judge George Edwards and Judge Bailey Brown, a former federal district judge in Tennessee for many years. The Court noted that ". . . the date the action accrued controls which statute of limitation is applicable."

*Buckner* should be compared, however, with *Murphree v. Raybestos-Manhattan, Inc.*, 696 F.2d 459 (6th Cir.1982), wherein Judge Gilbert Merritt, another Judge on this Court from Tennessee, authored an opinion which reached a different result as to the effect of the 1979 asbestos amendment, holding that the Tennessee Constitution, Art. 1, Sec. 20, would not bar Murphree's claim under the circumstances of that case. Murphree had been exposed to Raybestos-Manhattan's product more than ten years before February, 1979, when he discovered he had cancer of the lining of

---

**4.** This latter Act was held not to "purport to confer any right of action upon injured employees. It merely makes violation of its prohibitions 'unlawful.'" It therefore "supplements" FELA. 337 U.S. at 188, 69 S.Ct. at 1033.

**5.** *Associated Indemnity Corp. v. Industrial Accident Commission*, 124 Cal.App. 378, 12 P.2d 1075 (1932), holds that under California workmen's compensation law, an employee developing an occupational disease, silicosis, over a course of time, was "injured" only when symptoms of silicosis became manifest, not when disability was first incurred by exposure to silicosis material. A six-month period of limitation was involved in that case.

**6.** The Missouri Supreme Court had held that Urie's claim was not barred by the statute of limitations. *Urie v. Thompson*, 352 Mo. 211, 176 S.W.2d 471 (1949).

**7.** Plaintiff Buckner in that case discovered he had asbestosis only in 1978, after the effective date of the 1978 Act, and before the 1979 amendment to the Act became effective on July 1, 1979. Most of the court's decision dealt with the effect of this amendment on the parties' rights. The court held the ten-year bar applied to the Buckner cause of action before the amendment and entered judgment for GAF.

the chest resulting from occupational exposure to asbestos-containing products. Judge Merritt concluded that Tennessee appellate courts had not spoken directly on the issue, but predicted the Tennessee Supreme Court would abrogate the "old vested rights doctrine" as applied to statutes of limitation in *Ford Motor Co. v. Moulton* [8] in view of the 1979 amendment doing away with the ten-year bar as to asbestos exposure claims. This Court in *Murphree* overruled the district court's decision which was consistent with *Buckner,* although it seems clear that other grounds were available for reversal.[9] Without reference to *Buckner,* decided the prior year, this Court cast doubt on the applicability of the ten-year bar of Tenn.Code Ann. § 29–28–103 in a particular situation where an asbestos-related injury was involved. We conclude, however, that *Murphree* is not determinative on the particular issue before us.

The United States Supreme Court has addressed the issue as to whether a statute may constitutionally limit a recovery regardless of liability in event of nuclear accident in *Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). The purpose of the statute challenged was to develop economically and feasibly private power through nuclear means. The court deferred to Congress' judgment in balancing the interests of affected groups, the power companies and the environmentalists, concluding the act to be constitutional because not "demonstrably arbitrary or irrational." 438 U.S. at 84, 98 S.Ct. at 2636. In footnote 32 (p. 88, 98 S.Ct. p. 2638) of that decision, the court observed that:

> Our cases have clearly established that "[a] person has no property, no vested interest, in any rule of the common law." *Second Employers' Liability Cases,* 223 U.S. 1, 50 [32 S.Ct. 169, 175, 56 L.Ed. 327] (1912), quoting *Munn v. Illinois,* 94 U.S. 113, 134 [24 L.Ed. 77] (1877). The "Con-

stitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object," *Silver v. Silver,* 280 U.S. 117, 122 [50 S.Ct. 57, 58, 74 L.Ed. 221] (1929), despite the fact that "otherwise settled expectations" may be upset thereby. *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 16 [96 S.Ct. 2882, 2892, 49 L.Ed.2d 752] (1976). See also *Arizona Employers' Liability Cases,* 250 U.S. 400, 419–422 [39 S.Ct. 553, 555–556, 63 L.Ed. 1058] (1919). Indeed, statutes limiting liability are relatively commonplace and have consistently been enforced by the courts.

In *Silver v. Silver,* 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929), the Supreme Court deferred to a legislative enactment of an automobile "guest statute" that withdrew a previously recognized common law right, stating:

> [w]hether there has been a serious increase in the evils of vexations litigation in this class of cases, where the carriage is by automobile, is for legislative determination and, if found, may well be the basis of legislative action further restricting the liability. Its wisdom is not the concern of courts.

The court approved, then, the action of a state which removed liability for a cause of action previously authorized by common law. Similarly, the Tennessee statute at issue extinguishes Mathis' claim for injury even before she discovered the injury for which she seeks recompense.

In *Adair v. Koppers Co.,* 541 F.Supp. 1120 (N.D.Ohio 1982), the court upheld Ohio's ten-year statute of limitations on claims arising from the "defective and unsafe condition of an improvement to real property" against a "person performing services" by constructing a defective conveyor. In the face of a challenge to the limitations stat-

---

**8.** 696 F.2d at 462. *Compare* the conclusions reached on this same issue in *Pugh v. Johns-Manville,* No. 79–3510 (M.D.Tenn. 1/18/81), unpublished, and *Hughes v. Raybestos-Manhattan,* No. 3–81–286 (E.D.Tenn. 12/8/81), unpub-

lished order of Magistrate Murrian. *Ford Motor Co. v. Moulton* is found at 511 S.W.2d 690 (Tenn.1974).

**9.** *See* 696 F.2d at 464 (Jones, J., concurring).

8ngнепanya

ute as violative of "due process and equal protection clauses," *id.* at 1128, Judge Krupansky held the statute to be constitutional even though the statute may have barred the claim before it accrued. He noted that "[t]he Ohio Legislature possesses the authority to change the rules of the common law or abrogate a common law right of action before it vests." *Id.* at 1128, citing *Silver v. Silver, supra,* 280 U.S. at 122, 50 S.Ct. at 58.

The court held, moreover, that the statute was "rationally related to the legislative goal of precluding litigation of claims wherein proofs have grown stale," 541 F.Supp. at 1128, and

> [s]ince there is no fundamental right to have access to courts to secure remedies for injuries, and since the instant claim involves a common law right rather than one entitled to special constitutional protection, access to the courts may be proscribed if there is a rational basis for so doing. *Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973).

If there has been a "permissible legislative object" expressed in the Tennessee statute under consideration, it would seem that even if it limits or bars what would otherwise have been a common law right of recovery, there is no due process violation involved. The expressed purpose of the statute is found in the Preamble to Tenn. Code Ann. § 29–28–103:

> WHEREAS, The General Assembly finds and declares that the number of product liability suits and claims for damages and the amount of judgments, settlements and the expense of defending such suits have increased greatly in recent years, and because of these increases the cost of product liability insurance has substantially increased. The effect of increased insurance premiums and increased claims has increased product cost through manufacturers, wholesalers and retailers passing the cost of the premium to the consumer. Further, certain product manufacturers are discouraged from continuing to provide and manufacture such products because of the high cost and possible unavailability of product liability insurance; and

> WHEREAS, In view of these recent trends and for the purpose of alleviating the adverse effects which these trends are producing, it is necessary to protect the public interest by enacting measures designed to make product liability insurance more readily available at a reasonable cost so that product cost may be lessened to the consumer; and

> WHEREAS, In enacting this act, it is the purpose of the General Assembly to provide a reasonable time within which action may be commenced against manufacturers, and/or sellers while limiting the time to a specific period of time for which product liability insurance premiums can be reasonably and accurately calculated; and to provide other changes to expedite early evaluation and settlement of claims....

Ch. 703, 1978 Tenn.Pub.Acts 468, 468–69.

It would appear that the desire to encourage product manufacturers to provide goods without undue costs and risks, and to make product liability insurance more readily available, are permissible legislative objectives, even if they will not necessarily be achieved through the means provided.[10] There is a rational relationship, however, between this statute and the aims and goals expressed in the legislative Preamble to the Act.

After his decision in *Buckner v. GAF, supra,* Judge Wilson once again addressed a due process contention as to the constitutionality of the Act in controversy, the plaintiff asserting that its application would deny the claimant "an opportunity to redress injuries sustained" in a non-asbestos related product liability claim in *Hawkins v. D & J Press Co.,* 527 F.Supp. 386, 388 (E.D. Tenn.1981). Applying a test of "reasonableness," and "balancing the conflicting interests of the parties," he concluded that the statute was constitutional, citing *Har-*

**10.** *Compare* the proposed Model Uniform Product Liability Act proposed in 1979 which casts doubt on the cost effectiveness of such state legislation on product liability insurance rates.

139

*graves v. Brackett Stripping Mach. Co.,* 317 F.Supp. 676, 683 (E.D.Tenn.1970). In *Hawkins,* plaintiff was injured in 1979 by an allegedly defective machine bought in 1966, and he filed suit within one year of the accident, which involved very serious permanently disabling injuries. Judge Wilson held that the ten-year bar to the Tennessee statute precluded the suit. He described this statute as follows:

TCA § 23–3703 [11] is clearly not a conventional statute of limitation based upon the occurrence of an event giving rise to a cause of action. Instead it establishes an absolute limit of ten years from the date a product was sold for use or consumption after which all product liability actions are barred.

*Hawkins v. D & J Press Co.,* 527 F.Supp. at 388. He noted the legislative preface and held the law as

clearly an attempt by the Legislature to create a reasonable time frame to enable manufacturers and distributors as well as their insurance carriers to calculate injury claims arising from the production of goods without compromising the rights of users or consumers of such goods to bring actions for damages within a reasonable number of years after the sale of the product. Although the proposed Uniform Product Liability Act (63 A.L.R.3d Product Liability § 221, 1980 Supplement) provides for a ten year limit without an absolute cutoff date, the Court cannot say that the Tennessee act which does provide an absolute limit would be impermissibly arbitrary. The Court also notes the existence of other absolute time limitations existing under Tennessee law which have been approved by the Tennessee Supreme Court. . . .

*Id.* at 389.

Thus, several Tennessee federal district judges have considered the statute in question; none found a due process violation in the statute on its face or as applied in the particular circumstances. The two Tennessee Circuit Judges on this Court viewed the effect of the asbestos relation exemption to the statute differently, but neither found the basic statute, which is at issue in this case, to be constitutionally infirm. (In this respect, however, it is fair to note that not all the cases presented a specific Fourteenth Amendment challenge to this Tennessee law).

Any statute of repose or limitation involves setting an arbitrary time period within which an action is to be brought, and parties may be ignorant about the particular time limitations involved. Thus, a delay, even without knowledge of the hazard involved in delay, may preclude the bringing of an otherwise meritorious claim.

Statutes of limitation find their justification in necessity and convenience rather than in logic. . . . They represent a *public policy* about the *privilege* to litigate.

*Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) (emphasis added). *See also Order of R.R. Telegraphers v. Railway Express Agency,* 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788 (1944). In *Riley v. United States,* 212 F.2d 692 (4th Cir.1954), the Fourth Circuit held that a statute of limitations providing that "no suit . . . shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made" began to run, even without knowledge of an insurance beneficiary, upon the death of the serviceman, not when the beneficiary became aware of the death. The court held

it is the general rule that Statutes of Limitation begin to run upon the happening of the event which gives rise to the claim or cause of action, and not from the time when the claimant receives notice of the happening of the event.

212 F.2d at 695.

In a comparable kind of situation, statutes of limitation barring suits against professionals such as architects and engineers after lapse of a specific period following the

---

11. Tenn.Code Ann. § 23–3703 is the predecessor of Tenn.Code Ann. § 29–28–103 and contains the same language which is at issue in this case.

design, plan, supervision or construction have been upheld in federal courts despite the fact that the injury arising from a claimed defect may have occurred after the limitation period. The effect of holding such a state limitation bar valid is to preclude an injured party from suing a party claimed to be responsible, although his knowledge of the defect, or his injury as a consequence of the effect, did not come about, or could not have come about, until after the statutory period prescribed. *See Wiggins v. Proctor & Schwartz*, 330 F.Supp. 350 (E.D.Va.1971), *aff'd*, No. 71–1952 (4th Cir., 3/8/72, per curiam); *Smith v. Allen-Bradley Co.*, 371 F.Supp. 698 (W.D.Va. 1974); *Agus v. Future Chattanooga Dev. Corp.*, 358 F.Supp. 246 (E.D.Tenn.1973).

█ No federal case has come to the court's attention which holds that a ten-year statute of repose, such as the Tennessee statute under consideration, is unconstitutional as violative of constitutional due process requirements. In tort claims, there is no cause of action and therefore no vested property right in the claimant upon which to base a due process challenge until injury actually occurs. An injury in the nature of a tort which occurs after a specified limitation period, such as the discovery of cancer, as in the instant case, does not give rise to due process protection. *See Dague v. Piper Aircraft*, 513 F.Supp. 19 (W.D.Ind.1980),[12] *Rosenberg v. Town of N. Bergen*, 61 N.J. 190, 293 A.2d 662 (1972); *see also* the discussion in Dworkin, *Product Liability in the 1980's: "Repose is Not the Destiny of Manufacturers,"* 61 N.C.L.Rev.

3364 (1981). Appellants raise no equal protection claim under the Fourteenth Amendment, relying only on a Due Process challenge thereunder, so it is not necessary to consider whether the statute in question establishes an irrational and capricious category.

█ For the reasons indicated and under the authorities cited, we conclude that application of the Tennessee ten-year limitation period does not violate appellants' due process rights; nor does it violate "public policy." This Court concludes that statute does not violate the due process requirements of the Fourteenth Amendment of the United States Constitution.

## CLAIM OF UNCONSTITUTIONALITY UNDER TENNESSEE CONSTITUTION

█ This Court looks to the decisions, if any, of the Tennessee Supreme Court to determine the question whether the statute in question is violative of the Tennessee Constitution. The parties agree that there is no decision of that court which directly addresses the issue of the constitutionality of this law under Article 1, Section 20,[13] or Article 1, Section 8,[14] of the Tennessee Constitution. We must, therefore, determine how the Tennessee Supreme Court would rule if presented with the same issue.[15]

Appellants cite only one Tennessee case in their brief, *Morris v. Gross*, 572 S.W.2d 902 (Tenn.1978), a case in which the Tennessee Supreme Court considered the constitutionality of a recently enacted 60-day limi-

**12.** This case was affirmed by the Seventh Circuit Court of Appeals after certification of a state law question to the Indiana Supreme Court, April 27, 1981, in an unpublished order.

**13.** "[N]o retrospective law, or law impairing the obligations of contracts, shall be made."

**14.** "Sec. 8. *No man to be disturbed but by law.*—That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

**15.** As stated in *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir.1981):

A federal court sitting in diversity must apply the law of the state's highest court. If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it. If the state appellate court announces a principle and relies upon it, that is a datum not to be disregarded by the federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*See also Coleman v. Western Electric Co.*, 671 F.2d 980, 983–84 (6th Cir.1982).

tation on bringing suit for medical malpractice as to actions pending as of May 1, 1976.[16] *Morris* recognized that "no one has a vested right in a particular remedy for the enforcement of a right of action and, thus, that the legislature ordinarily may change existing remedies for the enforcement of rights, including those which have already vested, without denying due process of law, provided, a substantial remedy to redress that right by some effective procedure is given." 572 S.W.2d at 905.

In *Morris,* a 1976 Amendment to the 1975 Medical Act was held unconstitutional under both the federal and state constitutions, because the plaintiff in that case had already filed a timely claim with the Malpractice Review Board, and could not be required, without notice, to file a legal claim on that claim within just sixty days. The right asserted by *Morris* under the circumstances was held to be one that could not "by legislative fiat" be retroactively limited in this drastic way without notice once to some extent carried into operation by the plaintiff under the Act. It was then an accrued or vested property right under these circumstances which could not constitutionally be withdrawn by a sixty-day filing requirement under Article 1, Sections 8 and 20, of the Tennessee Constitution, or under due process requirements. The language utilized by the Tennessee Supreme Court sets out:

It is equally clear, however, that principles of due process forbid the legislature to *abolish* a remedy that has been so far carried into operation that the *substantive rights* of the litigants would be adversely affected if the remedy, as to them, were abolished.

*Id.* (emphasis added).

*Morris* was considered by a Tennessee appellate court and this precise language interpreted the next year in *Jones v. Morristown-Hamblen Hospital Association, Inc.,* 595 S.W.2d 816 (Tenn.App.1979), permission

to appeal denied by the Supreme Court, 1980. The Court in *Jones* considered the application of the same act, the Tennessee Medical Malpractice Act, Tenn.Code Ann. § 23–3401, *et seq.,* which became effective July 1, 1975, and the three-year maximum limitation period under that Act. That court concluded:

A statute of limitation, therefore, may not be given retrospective application so as to bar an accrued right of action, but may bar a cause of action which has not yet accrued or vested. *See generally* 16 C.J.S. *Constitutional Law* § 254 at p. 1242.

595 S.W.2d at 820.

The *Jones* court reasoned, and the Tennessee Supreme Court refused permission to hear any appeal from the result of that reasoning, that "[a]pplication of § 23–3415(a) to this suit does not impair any vested right of action existing at the time of its effective date [1975] and is, therefore, constitutionally permissible." The *Jones* court noted that the Tennessee Supreme Court in *Harrison v. Schrader,* 569 S.W.2d 822 (Tenn.1978), recognized that the Tennessee Medical Malpractice Act "was passed in an atmosphere of crisis.... The Court recognized some harsh results would flow from the legislature's action, such was the intent of the Act." 595 S.W.2d at 821.

In *Harrison v. Schrader, supra,* the Tennessee Supreme Court had upheld the constitutionality of the Medical Malpractice Act [17] and the three-year limitation, set out in Tenn.Code Ann. § 23–3415(a), which reads, in pertinent part:

in no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment....

The Tennessee Supreme Court in a decision by its Chief Justice, now deceased, in *Harrison,* 569 S.W.2d at 824, observed:

---

16. The statute, Tenn.Code Ann. § 23–3403(g), involved procedural requirements of medical malpractice claims and a newly created Medical Malpractice Review Board.

17. Officially the Act was styled "Medical Malpractice Review Board and Claims Act of 1975," but it is generally referred to as the "Medical Malpractice Act."

It should be noted at the outset that this is not a conventional statute of limitations. Rather it is an outer limit or ceiling superimposed upon the existing [negligence] statute.... Suits must be brought within one year from and after the date of the injury or damage, or the date such injury or damage was discovered, subject to the three-year ceiling fixed by Sec. 23–2415(a). *See Watts v. Putnam County,* 525 S.W.2d 488 (Tenn.1975).[18]

The Supreme Court concluded that the three-year "outer limit or ceiling" was not demonstrably unreasonable and irrational even though it applied only to those suffering injuries from "health care providers." 569 S.W.2d at 825. There was a recognized "medical malpractice insurance crisis," and "premiums had risen astronomically." 569 S.W.2d at 826. The court observed, quoting from *Barnes v. Kyle,* 202 Tenn. 529, 535 (1957), that

> [t]he constitutional guaranty providing for open courts and insuring a remedy for injuries does not guaranty a remedy for every species of injury, but applies only to such injuries as constitute violations of established law of which the courts can properly take cognizance.

In addition, the Tennessee Supreme Court in *Harrison v. Schrader,* 569 S.W.2d at 827, quoted with approval United States District Judge Frank Wilson's decision in *Hargraves v. Brackett Stripping Machine,* 317 F.Supp. at 682, that

> [t]he legislative body, in enacting such legislation, may weigh the conflicting interests between one person's right to enforce an otherwise valid claim and another person's right to be confronted with any claim against him [within a reasonable time].

To a similar effect, it quoted with approval from the Delaware Superior Court's decision in *Dunn v. Felt,* 379 A.2d 1140 (Del.Super.1977), that "[t]he General Assembly has the power to create new rights and abolish old ones as long as they are not vested." 569 S.W.2d at 827. Chief Justice Henry, speaking for a unanimous Court, indicated his philosophic difficulty with the effect of such a statute, but conceded it was for the legislature to set this policy, even in the face of "[u]ndeniabl[e] ... hardship." 569 S.W.2d at 828. The specific constitutional challenges made in *Harrison v. Schrader, supra,* were not the same challenges made by appellants in this case, but the general and broad language used by the court seems, nevertheless, to address the due process challenge made here. The court cautioned in its opinion on the petition to rehear that "this case does not provide an answer to the question of the retroactive application of the statute." 569 S.W.2d at 828. The previously discussed *Jones* case, however, presented that question and was decided in conformity with the guidelines set out in *Harrison.*

*Watts v. Putnam County,* 525 S.W.2d 488 (Tenn.1975), authority relied upon in *Harrison,* dealt with a limitation in Tenn.Code Ann. § 28–314, which provided that all actions be brought "within four years after substantial completion of the improvements." This limitation, which overturned existing negligence limitations, was upheld although all actions based on such deficiencies or negligence of architects, engineers or contractors had to be brought "within four (4) years after substantial completion of the improvement," even if not discovered until much later. 525 S.W.2d at 491. Despite the prior judicially created "discovery rule" in Tennessee under *Teeters, supra,* and *McCroskey v. Bryant Air Conditioning,* 524 S.W.2d 487 (Tenn.1975), the Tennessee Supreme Court in *Watts* noted with approval a federal decision in Tennessee to this same effect, *Agus v. Future Chattanooga Dev. Corp.,* 358 F.Supp. 246 (E.D.Tenn.1973), wherein Judge Wilson held:

> [T]he intent of the Tennessee [L]egislature in passing T.C.A. § 28–314 was to *insulate* contractors, architects, engineers

---

18. The Tennessee Supreme Court also noted (fn. 1, p. 824) in *Harrison,* as it had in *Watts v. Putnam County,* that this statute of limitation is one of several passed in recent years in response to the promptings of special interest groups imposing different periods of limitation on different individuals and classes.

and the like from liability for their defective construction or design of improvements to realty *where either the occurrence giving rise to the cause of action or the injury happens more than four years after the substantial completion* of the improvement.

*Id.* at 251 (quoted in 525 S.W.2d at 492 (emphasis added)).

It is evident that the Tennessee court recognized in 1975 that the rationale of *Agus* and *Watts* might produce harsh results and that such statutes of insulation and limitation (including those in the medical field) had been the subject of Law Review criticisms. It called upon the Tennessee legislature to undertake "a comprehensive revision of all statutes of limitations in Tennessee to the end that uniform periods of limitation be established." 525 S.W.2d at 495. The product liability statute of repose was adopted three years later; the medical malpractice and builders statutes of repose have remained in effect substantially unchanged. In 1981, moreover, in *Harmon v. Angus R. Jessup Associates,* 619 S.W.2d 522 (Tenn.1981), another Chief Justice of the Tennessee Supreme Court, speaking for a unanimous court, upheld the four-year limitation considered in Watts in the face of a federal and state constitutional challenge similar in nature to that raised by appellants herein, citing *Harrison v. Schrader, supra; Woodward v. Burnham City Hospital,* 79 Ill.2d 295, 37 Ill.Dec. 558, 402 N.E.2d 560 (1979), *appeal dismissed,* 449 U.S. 807, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980), and *Carter v. Hartenstein,* 248 Ark. 1171, 455 S.W.2d 918 (1970), *appeal dismissed,* 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971).

The *Harmon* court noted that the General Assembly "was concerned with an unreasonable risk of indefinite exposure to claims ... [and that the] legislation involved here is reasonably related to that legislative concern." 619 S.W.2d at 525. The court there upheld the right of the Tennessee legislature to "reasonably prescribe outside limits

for the filing of claims regardless of traditional concepts of the 'accrual' of a cause of action in tort." The decision was reached in *Harmon* in full recognition of a "decided split of authority in other jurisdictions" but noted that the "greater number of decisions have sustained such statutes." *Id.* at 525. Thus, statutes of repose of the type involved in this case have been consistently upheld by Tennessee courts.

Even more directly related to plaintiff's challenge, and also directly on point, is the case of *Petty v. Vulcan Iron Works,* Prod. Liab.Rep. (CCH) ¶ 9282 (Tenn.App.1982), the Tennessee Court of Appeals and the Tennessee Supreme Court denied certiorari, July 12, 1982. In *Petty,* plaintiff's husband was killed while operating a device manufactured by defendant Vulcan, in 1956, and suit was filed during 1980 within a year after the alleged wrongful death. The trial court sustained defendant Vulcan's motion for judgment based on the ten-year limitation in Tenn.Code Ann. § 29–28–103, and the Tennessee appellate court affirmed that decision. The court's ruling cited *Hawkins v. D & J Press Co., supra,* Fineberg, *Tennessee Products Liability* § 8–9,[19] and *Harrison v. Schrader, supra,* in support of its conclusion. Although not a reported or published decision, this case involving the very statute here at issue is persuasive authority as to what the highest court of Tennessee would decide if the issue had been presented to it.

In sustaining the statute in dispute in this case, the Tennessee appellate court stated:

It is the contention of the plaintiff that T.C.A. § 29–28–103(a) which establishes a ten year limitation period concerning products liability actions, violates Article 1, Section 17, of the Tennessee Constitution.

In the 1978 decision of *Harrison v. Schrader,* 569 S.W.2d 822, Justice Henry writing, put the question to rest in another "outer-limits" statute of limitations question. In *Harrison, supra,* it is said:

---

19. This authority, Fineberg, was quoted in the *Petty* decision for support as to the validity of the ten year limitation period; Fineberg cited, among others, *Tate v. Lilly & Co., supra,* and *Buckner v. GAF Corp., supra.*

"In *Dunn v. Felt,* 379 A.2d 1140 (Del. Super.1977), the Superior Court of Delaware addressed the plaintiff's contention that Delaware's three-year statute of limitations in medical malpractice actions violated a provision of the Delaware Constitution similar to that in the Tennessee Constitution.

The plaintiffs, I think, are mistaken in their notion of what [the statute of limitations] does. It does not eliminate a remedy for a civil wrong; it simply provides that after 3 years no cause of action can arise. The General Assembly has the power to create new rights and abolish old ones so long as they are not vested. (emphasis supplied)."

On November 30, 1981, this court filed an opinion in the case of *Holland v. Metropolitan Life,* in which we rejected the plaintiff's attempt to assert that a continuing tort had occurred which would circumvent the ten-year statute. In *Holland, supra,* we held:

"Like TCA 28–3–202, TCA 29–28–103 (the so-called 'products liability' statute of limitation) is a statute of 'ultimate repose,' providing for the maximum time limit in which a suit for damages must be brought on account of personal injuries due to defective or unreasonably dangerous products. Obviously, there is no significant difference between the two statutes of limitation, insofar as their purpose or effect is concerned. Accordingly, this court is constrained to hold that if TCA 28–3–202 is constitutional, TCA 29–28–103 is likewise constitutional."

The Tennessee Supreme Court, as noted, declined certiorari in that case.

We have attempted to analyze the pertinent Tennessee cases that deal with the particular statutes of repose here involved, as well as those deemed analogous, the Medical Malpractice Act three-year limitation and the four-year limitation on building design and construction suits charging professional malpractice. Many, indeed most, of these cases have involved situations where an asserted right or claim arose, or became known, after the statutory period for filing suit had expired (without delay or dilatory conduct on the part of the claimant). Despite the earlier adoption of a "discovery rule" in Tennessee, the courts have held these claims to be barred, even if their existence was not even known to the claimant until after the repose period involved. An authority who has made an exhaustive study of the constitutionality of product liability statutes of repose, such as the one in controversy, has stated:

No state appellate court, however, has relied solely upon due process to overturn a product liability statute of repose.

McGovern, *Symposium Products Liability— The Variety, Policy and Constitutionality of Product Liability Statutes of Repose,* 30 Am.U.L.Rev. 579, 613 (1981). That author stated further that "a number of cases have addressed the constitutional impairment caused by the retroactive application of product liability statutes of repose. The retroactivity issue usually has been included as a part of the due process analysis. Courts generally have concluded that as long as the statute does not adversely affect vested rights, retroactive application is constitutionally permissible." (footnotes omitted.) [20]

In summary, Tennessee courts have rejected challenges to statutes of limitation in other contexts which have the similar effect of extinguishing claims before they arise. They have recognized the sometimes harsh results of such statutes, but only after balancing the interest of potential claimants with other relevant factors. These statutes have not been held by Tennessee courts to be inconsistent with the adoption of the discovery rule, nor invalid under the Tennessee Constitution.

Our decision in this case is that of determining what the highest court of Tennessee would decide had it been faced with the

**20.** In Chart I attached to the article in the American University Law Review article, Professor McGovern lists Tennessee and Indiana as states in which the product liability limitation has been upheld; that Chart lists Florida to the contrary, where an architect and contractor's limitation on malpractice was also held unconstitutional by its state courts.

Tennessee constitutional challenge to Tenn. Code Ann. § 29–28–103 here made by appellants. It is not for us to judge whether this Court would reach the same result if we were called upon to decide the case "on our own" based on Tennessee constitutional provisions cited.

Accordingly, we conclude that under all the circumstances present and the Tennessee decisions reviewed, that the decision of the trial court should be AFFIRMED and that Tenn.Code Ann. § 29–28–103 withstands both the federal and state constitutional challenges presented.