**Alfred E. VanHAVERBEKE, Administrator of the estate of Maureen N. VanHaverbeke, Plaintiff,**

v.

**Timothy BERNHARD, et al., Defendants.**

**No. C–3–85–577.**

United States District Court, S.D. Ohio, W.D.

July 3, 1986.

Robert B. Newman, Thomas F. Phalen, Jr., Cincinnati, Ohio, for plaintiff.

Francis S. McDaniel, Dayton, Ohio, for defendant Timothy Bernhard.

Neil F. Freund, Dayton, Ohio, for defendant Christopher S. Kelley.

OPINION CONDITIONALLY OVERRULING DEFENDANT KELLY'S MOTION FOR SUMMARY JUDGMENT IN PART AND SUSTAINING SAME IN PART (DOC. # 19); PLAINTIFF ORDERED TO FILE AFFIDAVIT AUTHENTICATING AND SUPPORTING EXH. A TO DOC. # 20 WITHIN TEN DAYS OF RECEIPT OF THIS OPINION

RICE, District Judge.

This case is before the Court on Defendant Christopher Kelley's Motion for Summary Judgment. (Doc. # 19). For the reasons set forth below, said Motion is conditionally overruled in part and sustained in part (with respect to the theory of substantial encouragement). Provided the Plaintiff complies with the conditions set forth by this Court herein, the Defendant Kelley will remain a party Defendant to this lawsuit.

As a preliminary matter, the Court notes that Plaintiff has attached an "Accident Report" as Exh. A to his Memorandum in Opposition to Defendant Kelley's Motion for Summary Judgment. (Doc. # 20).

Plaintiff argues that the admissibility of this Report is governed by Federal Rule of Evidence 803(8). Plaintiff, however, has failed to attach an affidavit of anyone who can personally aver the authenticity of this Report (pursuant to Fed.R.Civ.Pro. 56(e)) or that the Report is a report "of public officers or agencies, setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law...." This Report contains information (*i.e.*, Defendant Bernhard's blood alcohol level) important, though not necessarily essential, to the Court's analysis of and ruling upon this Motion for Summary Judgment. Because the Court, based upon the appearance that Exh. A is in fact a genuine State Highway Patrol accident report, believes obtaining an affidavit authenticating and supporting the Report (under Rule 803(8)) will be a mere formality, the Court will include the Report's information in its analysis herein and conditionally overrule the Motion for Summary Judgment. Plaintiff is ordered, however, to file such an affidavit within ten (10) days of the filing of this opinion. Failure to file such an affidavit may result in the Court reconsidering this opinion without the inclusion of the information set forth in the accident report.

### A. *Facts*

█ This case arises out of the death of Maureen VanHaverbeke on May 25, 1985. Plaintiff alleges that on that date, Mr. Kelley invited his co-Defendant, Timothy Bernhard, to accompany him to a wedding. After the wedding, the Defendants went to a reception, where Mr. Bernhard admittedly drank *five screwdrivers*, allegedly in the presence of Mr. Kelley. Following the reception, and a visit to Mr. Bernhard's house, the two Defendants decided to go to a fraternity party at Wittenburg University in Mr. Bernhard's Mazda sports car. Mr. Bernhard drove. On the way to Wittenburg University, the Defendants purchased a six pack of beer. Mr. *Kelley* drank *one* of these beers on the trip. Once they had arrived at the fraternity party, Mr. Bernhard drank *one* of the beers. The two

Defendants soon left the fraternity party and went to Mr. Bernhard's dormitory room, where Mr. Bernhard drank *another beer* in Mr. Kelley's presence. Mr. Kelley then telephoned the decedent, Maureen VanHaverbeke, and invited her to return to Beavercreek, Ohio in Mr. Bernhard's automobile. Miss VanHaverbeke accepted this invitation, and the two Defendants went to pick her up at her dormitory. Mr. Bernhard drove, and Miss VanHaverbeke sat on Mr. Kelley's lap in the front passenger seat, since there was no other seating area in the car. There is no evidence, at least on the record before the Court, that either Mr. Bernhard or Mr. Kelley warned Miss Van-Haverbeke that Mr. Bernhard had been drinking on that day. On the trip to Beavercreek, Mr. Bernhard's car swerved to avoid hitting another car, slid off the road, down an embankment, and overturned, killing Miss VanHaverbeke. A blood alcohol test, performed approximately two hours after the accident showed the driver, Bernhard, had a blood alcohol level of .18 percent. Exh. A to Doc. # 20 at 12. Under Ohio law, a person with .10 percent blood alcohol or more is illegally driving while intoxicated. *See* O.R.C. § 4511.19(A)(1). This Court can take judicial notice of the fact that a person who has a blood alcohol level of .18, two hours *after* an incident, has an even higher blood alcohol content at the time *of* the incident.

### B. *Issues*

Plaintiff's Complaint states in broad terms the basis for Defendant Kelley's alleged liability: "In participating in the activity as described above Defendant Kelly [sic] acted negligently and a proximate result of that negligence was the death of Maureen VanHaverbeke." Doc. # 1 at ¶ 12. Plaintiff's Memorandum in Opposition to Defendant Kelly's [sic] Motion for Summary Judgment (Doc. # 20) clarifies Plaintiff's theory of liability:

Plaintiff has alleged that Defendant Kelly [sic] was negligent, and a proximate result of that negligence was the death of Maureen VanHaverbeke. The evi-

dence of that negligence consists of Mr. Kelly's [sic] knowledge of Mr. Bernhard's heavy drinking during the course of the day and night of May 25, 1985; his knowledge that that drinking represented a significant danger; his invitation to Ms. VanHaverbeke to ride in the automobile with Mr. Bernhard driving; his knowledge that Ms. VanHaverbeke had no means of knowing that Mr. Bernhard represented a risk of serious danger, and his failure to warn Ms. VanHaverbeke of the danger; and further his assistance and encouragement of Mr. Bernhard's tortious conduct.

From this statement, it is clear that Plaintiff's claim against Mr. Kelley is based upon his alleged failure to warn the decedent of Mr. Bernhard's drinking and upon his alleged assistance and encouragement of Mr. Bernhard's tortious conduct. Such claim is not based on any theory of negligence imputed to Mr. Kelley by participation in a joint venture with Mr. Bernhard. In other words, Plaintiff claims that Mr. Kelley is liable because he himself was negligent, not because Mr. Bernhard's alleged negligence is imputed to him. The Court, therefore, does not need to address the issue of whether Mr. Kelley had a right of control over Mr. Bernhard for joint venture purposes. Rather, the Court must determine whether Mr. Kelley had a duty to warn Miss VanHaverbeke of Mr. Bernhard's previous drinking (five screwdrivers and two beers within a few hours of the invitation being extended to the Decedent) in light of the fact that Mr. Bernhard was driving, whether Mr. Kelley had a duty not to encourage or assist Mr. Bernhard's drinking and whether genuine issues of fact exist with regard to these allegations.

A prerequisite to a decision on the issue presented by Defendant Kelley's Motion for Summary Judgment is a determination of the applicable law. In a diversity action, a district court must apply the substantive law of the forum state as expressed by the state's legislature and the decisions of its highest court. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938); *Winston Corp. v. Continen-*

*tal Casualty Co.,* 508 F.2d 1298 (6th Cir. 1975). In the absence of a state statute permitting unanswered issues of law to be certified to the state's highest court (no such statute exists in Ohio), the district court must resolve state law issues in the following manner:

> If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it. If the state appellate court announces a principle and relies upon it, that is datum not to be disregarded by the federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*Clutter v. Johns-Manville Sales Corp.,* 646 F.2d 1151, 1153 (6th Cir.1981); *see also Grubb v. W.A. Foote Memorial Hospital,* 741 F.2d 1486, 1500 (6th Cir.1984) (federal courts' respect for the role of state courts as primary expositors of the principles of state law counsels restraint when called upon to declare new principles of state law), *reconsideration granted and judgment vacated on other grounds,* 759 F.2d 546 (6th Cir.1985); *Mathis v. Eli Lilly and Co.,* 719 F.2d 134 (6th Cir.1983).

### 1. *Defendant Kelley's Duty to Warn*

■ Turning to the issues presented in this case, the Court must first determine whether, under Ohio law, a passenger in an automobile has a duty to warn other passengers when he or she has knowledge that the driver of the vehicle has consumed quantities of alcoholic beverages sufficient to impair his or her driving ability when the other passenger(s) did not know and could not have known of the drinking and the driver's potentially impaired condition. No reported decision in Ohio has directly addressed the issue of whether this duty to warn exists. However, on review of analogous duties to warn under Ohio law and on the basis of policy concerns favoring creation of such a duty, the Court finds that if the Ohio Supreme Court were to reach the question, it would impose a duty upon a passenger with knowledge that the driver

has been drinking alcoholic beverages to warn other passengers who could not have known of that drinking or of the driver's potentially impaired condition.

In reaching this conclusion, the Court is guided by the overwhelming increase in public awareness of the dangers of drunken driving which has occurred in the past few years. Through television, radio, newspapers and magazines, the public has been literally inundated with information regarding the causal relationship between drunken driving and a large number of motor vehicle collisions and fatalities. Indeed, the Ohio Supreme Court itself has pointed out:

> [T]he catastrophies associated with drunk driving, the tragic loss of life and the permanent debilitating injuries that can result have reached nearly epidemic proportions across the nation. This has prompted aggressive and positive steps to combat this carnage by volunteer groups and the private sector as well as various state legislatures, including our own.

*City of Columbus v. Adams,* 10 Ohio St.3d 57, 461 N.E.2d 887, 890 (1984); *see also State v. Tanner,* 15 Ohio St.3d 1, 3, 472 N.E.2d 689, 692 (1984). In light of this flood of facts and warnings, it is inconceivable that an individual could remain unaware of the terrible threat the drunken driver poses to his or her passenger, to other motorists and to himself or herself. *See State v. Tanner,* 15 Ohio St.3d at 3,

472 N.E.2d at 691 ("We can see no reason why a person of ordinary intelligence would have any difficulty in understanding that if he had drunk anything containing alcohol, and particularly any substantial amount thereof, he should not attempt to drive or take control of a motor vehicle.") (quoting *Greaves v. State,* 528 P.2d 805, 808 (Utah 1974)).

The Court believes that the Ohio Supreme Court, if faced with this issue, would find that the law must change to reflect this massive public awareness. Specifically, the Court believes that the Ohio Supreme Court would impose a duty on passengers with knowledge of a driver's drinking and potential intoxication, to warn other passengers of that impairment, in situations where the other passenger(s) did not know and could not have known of the drinking.[1]

Ohio law presently imposes duties to warn in a variety of situations. Manufacturers have a duty to warn consumers of the dangerous propensities of their products. *See, e.g., Knitz v. Minster Machine Co.,* 69 Ohio St.2d 460, 432 N.E.2d 814 (1982). A landowner has a duty to social guests "to warn ... of any condition which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition." *Scheibel v. Lipton,* 156 Ohio St.

---

1. The Court also notes in considering how the Ohio Supreme Court would decide the issue presented in this case that that Court has in recent years aggressively expanded the rights of plaintiffs. For example, the Ohio Supreme Court has found that workers covered by the workers' compensation system may nevertheless sue employers for intentional torts, *Jones v. VIP Development Co.,* 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984); *Blankenship v. Cincinnati Milacron Chemicals, Inc.,* 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), has found that a cause of action exists for intentional infliction of emotional distress, *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), and has expanded tenant rights to have safe rental premises, *Shroades v. Rental Homes,* 68 Ohio St.2d 20, 427 N.E.2d 774 (1981). The Ohio Supreme Court has also recently abolished parental immunity,

*Kirchner v. Crystal,* 15 Ohio St.3d 326, 474 N.E.2d 275 (1984), and charitable immunity, *Albritton v. Neighborhood Centers, Inc.,* 12 Ohio St.3d 210, 466 N.E.2d 867 (1984), and has limited the sovereign immunity of public schools, *Zagorski v. South Euclid-Lyndhurst Bd. of Educ.,* 15 Ohio St.3d 10, 471 N.E.2d 1378 (1984). Further, the Ohio Supreme Court has imposed a "discovery rule" in medical malpractice cases, *Oliver v. Kaiser Community Health Foundation,* 5 Ohio St.3d 111, 449 N.E.2d 438 (1983) and product liability (asbestos) cases, *O'Stricker v. Jim Walter Corp.,* 4 Ohio St.3d 84, 447 N.E.2d 727 (1983). Viewing these cases as a whole, this Court must conclude that the Ohio Supreme Court would approach the issues present in this case with a policy of broadly construing the rights of this Plaintiff.

308, 102 N.E.2d 453 (1951). Amusement park owners have a duty to warn a patron "that the nature of the ride was such that he might be injured in the normal course of its operation." *Jackson v. King's Island,* 58 Ohio St.2d 357, 390 N.E.2d 810 (1979). Passengers have a duty to warn the driver of an automobile of danger visible to themselves and invisible to the driver. *See Golamb v. Layton,* 154 Ohio St. 305, 95 N.E.2d 681 (1950); *Richlin v. Amusement Co.,* 113 Ohio App. 99, 170 N.E.2d 505 (1960).

Ohio, on the other hand, has developed little law with regard to the duties owed by an automobile driver to his or her passengers, or of a passenger to other passengers. In large part, this is due to Ohio's Guest Statute, which, until 1975, (when the Ohio Supreme Court declared it unconstitutional in *Primes v. Tyler,* 43 Ohio St.2d 195, 331 N.E.2d 723 (1975)) limited the driver's liability to non-paying guests of drivers to instances of gross negligence or of willful or wanton misconduct. *See, e.g., Kemp v. Parmley,* 16 Ohio St.2d 3, 241 N.E.2d 169 (1968). Other states, not limited by guest statutes, have long recognized the duty of owners with knowledge of a vehicle's defects to warn their passengers of the possible danger. *See, e.g., Olson v. Buskey,* 220 Minn. 155, 19 N.W.2d 57, 59 (1945) ("[O]ne who invites another to ride in an automobile is not bound to furnish a sound vehicle, but ... if the host has knowledge of a defective condition of the vehicle which would make riding in it hazardous or unsafe for the guest, the host has the obligation to warn the guest of such danger."); *Lipsman v. Warren,* 17 Misc.2d 807, 188 N.Y.S.2d 426, 428 (Sup.Ct. 1959) ("An owner or operator of an automobile is not liable for the death or injury of a guest occasioned through a mechanical defect in the car, although by inspection he might have discovered the fault, *unless* he knew of the dangerous condition and failed to warn his guest of such condition and the risk involved." (emphasis added)).

Taking the types and varieties of duties to warn already in existence in Ohio, along with the duty to warn imposed on drivers in states not bound by guest statutes such as previously existed in Ohio, and the public crisis caused by drunken driving (as recognized by the Ohio Supreme Court), this Court concludes that if the Ohio Supreme Court were to address this issue, it would find that a passenger with knowledge of a driver's intoxication (or that a driver has consumed five screwdrivers and two beers within the past few hours) has a duty to warn other passengers, having no knowledge of the driver's drinking and possible intoxication, of that impairment. In reaching this finding, the Court again notes that under Ohio law, a landowner host has a duty to warn any social guests of dangerous conditions on his or her premises which guests would not themselves discover. *Scheibel v. Lipton,* 156 Ohio St. at 308, 102 N.E.2d at 453. This duty to warn is identical to the duty of automobile operators to warn passengers of known defects in a vehicle, if "automobile operator" is substituted for "landowner host." In light of the Ohio Supreme Court's rejection of the Ohio Guest Statute, this Court can find no material distinction between the relationships of landowner host/social guest and of automobile operator/invited passenger. As the Ohio Supreme Court pointed out in the context of a landowner host/social guest relationship in *Scheibel:* "The philosophy underlying all the decisions with respect to host and guest relationships is that the host extends his hospitality to the guest and that the guest accepts hospitality." 156 Ohio St. at 330, 102 N.E.2d at 463. It is precisely this hospitality that is also the basis of the automobile operator/invited guest relationship. Thus, the Court believes that under Ohio law since the demise of the state guest statute, an automobile driver has a duty to warn invited passengers of known defects in the vehicle.

Further, the Court finds, in light of a passenger's duty to warn a driver of unseen dangers, that Ohio law imposes a requirement of care for the safety of an automobile and its occupants upon such a passenger. When the "defect" in an automobile is a driver who has been drinking, a

passenger, particularly one who has witnessed the driver's drinking, is in perhaps the best position to warn others of that danger. A person who has been drinking intoxicating beverages who decides to drive, it may be presumed, is unlikely to warn passengers of his or her dangerous impairment.[2] The passenger, who knows that the driver has been drinking is thus placed in a position with respect to his or her duties to warn other passengers analogous to a passenger who sees an oncoming danger invisible to the driver. As noted by the Court above, given the massive publicity concerning the drunken driving crisis, it is impossible today not to be aware of the terrible danger (to others on the highway and to the passengers within the car) of a driver known to a passenger to have been drinking. Accordingly, based upon the duties to warn imposed upon both passengers and hosts under Ohio law, and upon this Court's finding that any person of ordinary intelligence must know that such a "drinking" driver is inherently dangerous, if the Ohio Supreme Court addressed the issue, the Court believes it would find that passengers with knowledge of a driver's drinking and possible intoxication have a duty to warn passengers who had no reason to know of that driver's drinking and possible impairment.

The Court wishes to stress that duty to warn explicated by this decision is not to other passengers who have an equal opportunity to know of the driver's drinking or equal access to information regarding the driver's potentially impaired condition. Rather, the duty is to those passengers who did not know of the drinking or who did not have equal access to information concerning the driver's drinking and possibly impaired condition.

■ The facts of this particular case, as indicated by the record now before the Court, buttresses this finding of a duty to warn. Both Mr. Bernhard's and Mr. Kelley's depositions indicate that it was Mr. Kelley who invited Miss VanHaverbeke to return to Beavercreek with them. Thus, Mr. Kelley was not merely a fellow passenger with Miss VanHaverbeke. Rather, he was Miss VanHaverbeke's host. His power to invite Miss VanHaverbeke is an indica of a partial, temporary right of ownership over Mr. Bernhard's sports car. In other words, while Mr. Kelley plainly was not the owner of Mr. Bernhard's sports car, Mr. Bernhard delegated to him (perhaps implicitly) one of the privileges of ownership, the power to invite guests. This power to invite guests into the automobile, combined with the knowledge of the "defect" in the automobile, Mr. Bernhard's alleged intoxication, places Mr. Kelley in precisely the same position, with regard to Miss VanHaverbeke, as an ordinary owner of an automobile with knowledge of a mechanical defect in the car, or of a landowner with knowledge of dangerous conditions on the land. Mr. Kelley's duty to warn Miss VanHaverbeke grows not only out of his responsibilities to her as a fellow passenger (which in itself would be enough to create a duty to warn), but also out of his obligations to her as the one who invited her into the automobile, that is, as her host. The Court, therefore, finds that if Mr. Kelley knew or should have known of Mr. Bernhard's drinking (which the Court finds was the case) and alleged intoxication, he had a duty to warn Miss VanHaverbeke of that danger.

■ Upon review of the record before it, the Court finds that genuine issues material to Mr. Kelley's duty to warn exist. Mr. Bernhard has indicated that his drinking five screwdrivers at the wedding reception was in Mr. Kelley's presence. *See* Bernhard deposition at 14 and 18. Mr. Kelley was also allegedly present when Mr. Bernhard drank at least two of the beers from the six pack the two had purchased. Further, the

2. This statement is not intended to indicate a lack of legal obligation on the part of a driver who has been drinking to warn passengers of his or her condition. Rather, this statement reflects the unfortunate reality that a person careless enough of human life to drive after drinking intoxicating beverages is not likely to be concerned with providing a warning to his or her potential victims.

**262**

record indicates that Bernhard's blood alcohol level was at .18 two hours *after* the incident, nearly double the .10 level set by Ohio statute as the minimum for illegal driving under the influence of alcohol. At a minimum, such a blood alcohol level, plus the known drinking of five screwdrivers and at least two beers from a six pack within several hours before the fatal crash, requires an inference that Bernhard's driving was impaired and that Kelley should have been aware of said impairment due to his (Bernhard's) drinking on the night of the accident. There is no evidence currently in the record that Mr. Kelley ever warned Miss VanHaverbeke of Mr. Bernhard's drinking and alleged intoxication. Accordingly, genuine issues, at least, exist as to whether Mr. Kelley's duty to warn Miss VanHaverbeke arose, and as to whether Mr. Kelley fulfilled this duty.

### 2. *Assistance and Encouragement*

Plaintiff also bases his claim against Mr. Kelley on the theory that Mr. Kelley assisted and encouraged Mr. Bernhard in his excessive drinking on May 25, 1985. In *Collopy v. Gardiner*, the Court of Appeals for Clermont County, Ohio held:

In the tort field, the doctrine [of section 876] appears to be reserved for application to facts which manifest a common plan to commit a tortious act where participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result ... "[t]he mere presence of the particular defendant at the commission of the wrong, or his failure to object to it is not enough to charge him with responsibility."

No. CA85–08–057, slip. op. at 5. (Ct.App. Clermont Cty., Ohio April 7, 1986) [Available on WESTLAW, OH–CS database] (quoting *Stock v. Fife*, 13 Mass.App. 75, 430 N.E.2d 845, 849 fn. 10 (1982)). In order for liability based on a substantial encouragement theory to exist, it must *not* appear that the driver and passenger were "each doing [their] own drinking voluntarily." *Collopy*, No. CA–85–08–057, slip op. at 5–6

(quoting *Olson v. Ische*, 343 N.W.2d 284, 289 (Minn.1984)).

In the present case, the record contains no evidence which raises genuine issues of material fact under the substantial encouragement theory as defined in *Collopy*. The only event that by inference can be construed as Mr. Kelley assisting Mr. Bernhard in his tortious conduct is their purchasing of a six pack of beer together. In light of the *Collopy* court's decision that "drinking and riding together" does not constitute substantial encouragement, the Court must find that no genuine issues of material fact exist that would support a theory of substantial encouragement.

In sum, the Court finds that the Ohio Supreme Court, were it to reach the issue, would find that a passenger owes *other* passengers a duty to warn them of his or her knowledge of a driver's possible impairment due to drinking when those *other* passengers could not reasonably have been expected to know of the driver's drinking. This is even more so when the passenger acts as host. Further, the Court finds that genuine issues of fact exist as to whether Defendant Kelley breached this duty with regard to Miss VanHaverbeke. Bernhard's .18 blood alcohol level two hours after the incident, plus the fact that he consumed five screwdrivers and two beers in Kelley's presence, within a few hours of Kelley inviting Miss VanHaverbeke to ride in the automobile, raises an inference that Kelley should have known that Bernhard's driving ability was impaired by his drinking on the night of the fatal accident. However, the Court finds that no genuine issues of fact exist that would support a finding that Mr. Kelley substantially encouraged and assisted Mr. Bernhard in his tortious behavior. Summary judgment is, accordingly, granted as to this theory of liability. Based upon these findings, the Court hereby conditionally overrules Defendant Kelley's Motion for Summary Judgment. (Doc. #19). Plaintiff is ordered to file an affidavit authenticating and supporting the Accident Report (Exh. A to

Doc. # 20) within ten (10) days of receipt of this Opinion.